### BECKHAM v. SOUTHERN RAILWAY CO.

1. PRACTICE—OPENING AND REPLY.—The defendant is only entitled to open and reply when he admits the plaintiff's cause of action.
2. EVIDENCE—MASTER AND SERVANT.—The statements of a servant in the discharge of the duties imposed upon him by his master are competent evidence.
3. IBID.—Under the issues in this case, the testimony objected to was competent.
4. NONSUIT is improper where there is any testimony tending to support plaintiff's claim.
5. CHARGE—RAILROADS—DAMAGES.—It was error for the Judge to charge the jury in this case, that it was the duty of the railroad to demand payment for the extra passengers as soon as the number was ascertained, and if it did not, but carried them on after the discovery, and then made the demand, it was liable for damages.

Before WATTS, J., York, November, 1896. Reversed.

Action by T. C. Beckham, J. F. Doby, and F. W. Culp

against the Southern Railway Company, for damages. The
following is so much of the charge as is necessary to under-
stand the questions:

Now, gentlemen, they further entered into an agreement
that no more than fifty-six people should be carried in each
passenger coach, and that the cars were to be run by the
train hands of the defendant company—that is, by the rail-
road. These parties had a right to sell tickets—by paying
the $530, they had the right to sell tickets—to whom they
pleased, and it was the duty of the railroad to carry them,
provided they didn't exceed fifty-six to a car, and two
children were to be counted as one passenger. Now, if the
plaintiffs put more than fifty-six people in a car under this
contract—fifty-six grown people or counting two children
as one grown person—then they would have been liable to
the railroad in any excess of that amount, provided demand
had been made upon them at the proper time. If the tes-
timony in this case satisfies you that when the train got to
Charlotte that these plaintiffs made a demand upon the
railroad company for an additional car, then I charge you
that it was not necessary for the railroad to furnish that
car, unless it was entirely convenient for them to do so, and
if at that time there were more people on that train than
fifty-six to the car, or if the plaintiffs had violated their con-
tract, and the railroad authorities knew it at that time, then
they should have demanded, right then and there, of these
plaintiffs the excess for that number, fare for the excess of
that number, or demanded of them the $105 for the use of
an additional car. If, when they got there, the train was
overloaded, and they knew it, and the plaintiffs had asked
them for an additional car, and it was not entirely conveni-
ent for them to furnish it, then they ought to have demanded
the pay for the excess of the number they allowed them to
carry, right then and there, or made them pay for an addi-
tional car, and furnished an additional car, or notified them
at that time that they would furnish them one higher up
the road; and if the plaintiffs had agreed to that, consented

to it, then, of course, the plaintiffs would have been obliged to pay for that additional car when they got to it. Under this contract here the parties agreed amongst themselves that they were to have five passenger coaches, and for every additional passenger coach which it was convenient for the railroad to furnish, if the plaintiffs demanded it, they were to pay $105. It was the duty of the railroad to furnish to the plaintiffs such a car as was contemplated by this agreement. They couldn't furnish an ice car, they couldn't furnish a box car, but they should have furnished the kind of car the agreement called for. For I charge you, as matter of law, that if they were to furnish five cars and a baggage car for $530 and $105 for an additional car, that meant an additional passenger car of the same comfort and convenience as the passenger cars which they had agreed to furnish them—such as the five were. Now, I charge you, as a matter of law, that if when this train arrived at Charlotte, and you believe that the plaintiffs asked for an additional car, and the railroad people knew that there were more people on that train than fifty-six to the car, then it was the duty of the railroad company to have made them settle right there and then, or to notify them where they might expect a car. If you believe from the testimony that they allowed more than fifty-six people to the car to leave Charlotte and got them up the road anywhere, and then sidetracked them there and wouldn't move the train until they paid the $105, and did that in the face of the protest of plaintiffs, and didn't furnish them with such a car as this agreement contemplated, the plaintiff would be entitled to such damages as you think they have sustained under the testimony in the case; and I have already indicated to you the measure of that damage. You can't punish this railroad here. You can't give any damages in the way of punishment, or vindictive damages, or speculative damages. The plaintiff would be simply entitled to actual damages. As I said before, if the defendant violated this contract, then they would be liable. If, when they got to Charlotte, there was

more people on there than they had contracted to carry, the railroad, at that point or whenever they discovered it, would have a perfect right to make them pay for the excess. But if they didn't make them pay for the excess when they discovered it, and didn't furnish them an additional car at that time, then they would be stopped from riding them a considerable distance after that time until they did strike where they could get a car, or found that they could get one, and then force them, as it were, into paying $105 for a car. I charge you that, inasmuch as this excursion train was run by the trainmen of the railroad, as soon as they discovered there was an excess, there and then they should have demanded pay for the excess.

The 4th, 5th, 6th, and 7th requests to charge, and what the Judge said in regard thereto, are as follows:

4th. "If the plaintiffs found that they needed more than five cars at Charlotte, North Carolina, and requested the defendant to furnish them one, and failed to get it at that point, because it was not convenient for the defendant to furnish it there, and, notwithstanding this, the plaintiffs allowed more than fifty-six persons to the car, or more than a total of 280 persons to the five cars to get on this train and continue there for the purpose of being transported, then the defendant had the right to furnish this car as soon after the request as it could conveniently do so, and to charge the sum of $105 for the same." I refuse to charge you that. When they made their demand on the railroad at Charlotte, and it was not convenient for them to furnish the car, they had a perfect right not to do it; but they should have told them then and there, "We can't furnish it now to you, but we can furnish it to you later on." In other words, if you are satisfied that a demand was made and refused, then they couldn't after that furnish this car up there, because the contract says, "Upon the request of the plaintiffs to furnish the car, they should do it, if it was convenient to do so." Well, if the plaintiffs made the request and it was refused, they had no right to furnish an-

other car, unless they were requested the second time. They had already made a request and it was refused by them. They had a perfect right to refuse it, but they could not take action after that about the matter, because the plaintiffs had a right to know where to expect that car. And when they refused them at Charlotte—if they refused them there—that ended it, as far as the plaintiffs' request was concerned, because they had made the request and they had been refused, and they had no right after that time to furnish a car, except upon the request of the plaintiffs.

5th. "Even if the defendant could not have furnished an extra car, on account of its being inconvenient to do so, such failure would not give the plaintiffs the right to allow more than fifty-six persons to the car to get aboard this train and remain there for the pupose of being transported, without paying the defendant for transporting any excess over fifty-six persons to the car, or 280 to the five cars." I charge you that, as a correct proposition of law, that the plaintiffs had no right to let more than fifty-six people get into the car, or 280 in all, and they were liable for the excess. But the demand for payment should have been made as soon as the authorities discovered it—it should have been made right then and there.

6th. "If it be a fact that the plaintiffs allowed 336 persons to ride on the train furnished by defendant, and if it be a fact that only five cars were furnished, because it was not convenient to furnish more, then plaintiffs were bound to pay defendant for transporting the number in excess over fifty-six to the car." Well, I have already substantially charged you that—that both parties were bound to carry out this contract, and the plaintiffs were bound to pay for the excess, provided demand was made upon them at the proper time. Whenever they found out they were overloaded, then demand should have been made.

7th. "If it be a fact that the plaintiffs allowed sixty-seven persons in excess of the number limited by the contract for the five cars to get on this train, and that only five

cars were furnished, and if it also be a fact that the plaintiffs have only paid for carrying this number, then they have no cause of action against defendant." I refuse to charge you that. Now, as I said before, the main point in this case is, who violated this contract? Both parties were bound to carry it out after they entered into it. And if more than fifty-six people were carried to a car, then they had no right to ride there without paying for it—I mean, the excess over fifty-six would not. But it was the duty of the railroad, when they found they were there, to demand payment at that time; and if they allowed it to go on, having their own servants and conductor there, and did not furnish a car when demand was made for it, and after demand was made they let them ride on, and then, when they got several miles up the road, furnished another car, and held them there until they paid the excess, then they would be liable for damages.

From judgment for plaintiff, defendant appeals on the grounds as, it is respectfully submitted, his Honor erred:

I. In allowing the question: "State what occurred between you and the railroad authorities, the agent or conductor of the railroad when you got to this station thirty miles from Asheville?" to be asked the witness, T. C. Beckham, and in allowing him to answer it.

II. In allowing the witness, T. C. Beckham, to testify to a conversation between himself and the supposed agent of the defendant, while at Old Fort, N. C., in reference to the extra car and the amount charged therefor.

III. In allowing the questions, "Was there any passenger on that car that could not get a seat or not? Were there any more than two passengers in a seat?" to be asked the witness, T. C. Beckham, and in allowing him to answer them.

IV. In allowing the witness, J. F. Doby, to be examined in reference to and to allow him to testify to statements of the alleged agent of the defendant while at Old Fort, and to testify that the conductor brought a message in the car,

and said he had instructions from the general manager to put us in the side track at Old Fort or collect $105 for an observation car."

V. In not ruling and holding that the evidence was insufficient to send the case to the jury.

VI. In ruling and holding that the burden of proof was on the defendant to show that plaintiffs had violated the contract.

VII. In refusing to grant the motion for a nonsuit.

VIII. In allowing the witness, F. W. Culp, to be examined and to testify as to what was realized or lost by the plaintiffs on this occasion.

IX. In allowing the witness, Culp, to be examined as to the receipts and disbursements of plaintiffs.

X. In allowing the witness, F. C. Beckham, to be examined and to testify as to whether he had accounted for and paid to Mr. Culp all the money he had received.

XI. In allowing the witness, J. F. Doby, to be examined and to testify as to whether he had accounted for and paid over to Mr. Culp all the money he received.

XII. In charging the jury in respect to matters of fact as follows: *a.* "Now * * * in the event you conclude the plaintiffs are entitled to damages here, you can only allow them the damages which they have actually sustained, which would be $105, if you believe the testimony, and interest on that from the time the money was paid." *b.* "The true measure of damages in this case, if they are entitled to any damages at all * * * to be paid by defendant to plaintiffs, is what the plaintiffs paid the defendant for the car, and interest on that from the time it was paid." Whereas, it is respectfully submitted, the amount of damages, if any, was a question entirely for the jury.

XIII. In charging that the plaintiffs were liable to the defendant for the excess of fifty-six persons to the car—counting two children as one person—if there was such excess, only in the event of demand being made upon the plaintiffs by the defendant for fare for this excess at Char-

lotte, N. C., or immediately upon its being ascertained by the defendants that there was an excess. Whereas, it is respectfully submitted, his Honor should have charged defendant's 4th, 5th, 6th, and 7th requests to charge without qualification.

XIV. In ruling and holding that even if there was an excess of fifty-six persons to the car, counting two children as one grown person, the plaintiffs were not bound to pay the defendant for carrying this excess, unless the defendant demanded the fare for such excess immediately upon ascertaining that there was such excess. Whereas, it is respectfully submitted, his Honor should have charged the jury that if plaintiffs allowed more than fifty-six persons to the car, counting two children as one grown person, to get aboard this train for the purpose of being transported from one point to another, they were bound to pay the defendant for carrying such excess.

XV. In charging: "If, when they got to Charlotte, there was more people on there than they had contracted to carry, the railroad, at that point or whenever they discovered it, would have a perfect right to make them pay for the excess. But if they didn't make them pay for the excess when they discovered it and didn't furnish them an additional car at that time, they would be estopped from riding them a considerable distance after that time until they did strike where they could get a car, or found they could get one, and then coerce them, as it were, into paying $105 for a car." Whereas, it is respectfully submitted, his Honor should have charged the defendant's 4th, 5th, 6th, and 7th requests to charge, without qualification.

XVI. In refusing to charge the following requests of the defendant: *a.* "If the plaintiffs found that they needed more than five cars at Charlotte, N. C., and requested the defendant to furnish them one, and failed to get it at that point because it was not convenient for the defendant to furnish it there, and, notwithstanding this, the plaintiffs allowed more than fifty-six persons to the car, or more than a total

of 280 persons to the five cars, to get on this train and continue there for the purpose of being transported, then the defendant had the right to furnish this car as soon after the request as it could conveniently do so, and to charge the sum of $105 for the same." *b.* "If it be a fact that plaintiffs allowed sixty-seven persons in excess of the number limited by the contract for the five cars to get on this train, and that only five cars were furnished; and if it be also a fact that plaintiffs have only paid for carrying this number, then they have no cause of action against the defendant."

XVII. In not charging without qualification the following requests of the defendant: *a.* "Even if the defendant could not have furnished an extra car on account of its being inconvenient to do so, such failure would not give plaintiffs the right to allow more than fifty-six persons to the car to get aboard this train and remain there for the purpose of being transported, without paying the defendant for transporting any excess over fifty-six persons to the car, or 280 to the five cars." *b.* "If it be a fact that plaintiffs allowed 336 persons to ride on the train furnished by defendant, and if it be a fact that only five cars were furnished, because it was not convenient to furnish more, then plaintiffs were bound to pay defendant for transporting the number in excess over fifty-six to the car." And in modifying these requests so as to charge that the plaintiffs were only bound to pay for transporting any excess over fifty-six persons to the car, provided the defendant demanded this pay immediately upon ascertaining that there was an excess.

XVIII. In charging that plaintiffs made a request for an extra car, and that this request was refused. Whereas, it is respectfully submitted, this was a question for the jury and not for the Court.

XIX. In charging the jury that "when the defendant refused to furnish the extra car at Charlotte, if they refused them there, that ended it as far as plaintiffs' request was concerned, because they made the request and they had been refused, and they had no right after that time to fur-

nish a car, except upon request of plaintiffs.'' Whereas, it is respectfully submitted, it was a question for the jury to determine whether there was a refusal on the part of the defendant to furnish the car, and whether or not there was a continuing request by plaintiffs to furnish the car.

XX. In ruling and holding that the defendants were not entitled to the opening and reply in this case.

*Messrs. Duncan & Sanders*, for appellant.

*Messrs. Wilson & Wilson*, contra.

July 13, 1897. The opinion of the Court was delivered by

MR. JUSTICE POPE. The plaintiffs brought their action against the defendant for $500 damages. The trial came on before his Honor, Judge Watts, and a jury, at the November term, 1896, of the Court of Common Pleas for York County, in this State. The verdict was for $105 in favor of the plaintiffs. After entry of judgment, the defendant appealed therefrom on twenty grounds. The Judge's charge and the grounds of appeal will be set out in the report of the case. Before disposing of these grounds of appeal, it may be profitable to give a brief history of the contention. On 29th June, 1895, the plaintiffs entered into a written agreement with the defendant about as follows: The Southern Railway Company agreed to furnish the plaintiffs a train of five passenger coaches and one baggage car, to be run by plaintiffs as an excursion from Chester, S. C., to Asheville, N. C., on the 10th July, 1895, returning the next day, at the price of $525 in cash, which was paid. Tickets were to be sold by plaintiffs from Chester, S. C., to Charlotte, N. C., inclusive, and it was stipulated that, if the plaintiffs should request one or more additional passenger coaches to be furnished for their use, the plaintiffs should pay $105 for each car so furnished; but it was not to be obligatory upon the railway company to furnish these additional passenger coaches, unless it be entirely convenient for them to do so. The plaintiffs agreed that not more

than fifty-six passengers shall be put in each passenger coach, and that passengers shall not be transported in baggage cars; two children under twelve years of age to be counted as one person; and that the railroad train men in charge of said train shall not be interfered with by, nor shall they be under the control of, said plaintiffs. It was especially agreed that passengers on the excursion train shall only be taken from Chester, S. C., to Charlotte, N. C. Under the aforesaid agreement, the excursion train left Chester, S. C., on the morning of the 10th of July, 1895, and when it reached Charlotte, N. C., was not full. At this latter point quite a number of tickets were sold by plaintiffs, and it was found, in fact, that there was not room to accommodate on the train all to whom tickets had been sold. Every effort was made by the defendant to secure additional coaches at Charlotte, N. C., but without success; so that the price of many tickets sold by the plaintiffs was refunded to the purchasers. After the train had left Charlotte, on its way to Asheville, N. C., the conductor and baggage master found 104 more persons on the train than were allowed under the contract—the limit, under the agreement in writing, being 280 on the five coaches; or fifty-six to each coach; but the plaintiffs showed that of these 104 in excess, thirty-seven were "dead heads"—that is, persons to whom no tickets had been sold, as vendors of refreshments, musicians, and the like; but after deducting this thirty-seven from the 104 in excess, it still left sixty-seven on board more than the plaintiffs had stipulated should be allowed on the train. When near the station known as Old Fort, about thirty miles from Asheville, N. C., the plaintiffs were informed that telegrams had been received by the conductor from the authorities of the railway, directing such conductor to collect $105 from the plaintiffs, and attach to the train another coach which was at said Old Fort; and if this sum was not paid by the plaintiffs, to detain the train at that point until the money was paid. The plaintiffs denied their liability to pay this sum,

or any sum, or that they needed this additional coach. Finally, after the delay of at least forty-five minutes, or one hour and thirty minutes at most, the plaintiffs paid this sum *under protest*, expressed in the receipt for the money so paid. The trip was then completed, both going and returning. The plaintiffs demanded a return to them by the railway company of the $105. The demand was refused. Hence this suit. The complaint set out the foregoing facts, especially the written agreement, demanding the repayment of $105, and $395 damages. The answer admitted many facts set out in the complaint, but denied any liability for any sum to the plaintiffs, and denied any breach of the agreement by it.

At the opening of the trial, the defendant demanded as its right the opening and reply in testimony and argument. This the Circuit Judge denied to them. This action of the Circuit Judge makes up the twentieth ground of appeal. We cannot sustain this ground of appeal, for the defendant did not by its answer admit all the allegations of plaintiffs' complaint. It concluded its answer with a denial of every other fact set out in the complaint not specifically admitted in the answer. The true rule, in the cases where defendant acquires the right to open and reply, is well stated in the opinion of Mr. Chief Justice McIver, in *Addison* v. *Duncan*, 35 S. C., 165, to exist in those cases where the defendant by his pleadings admits the plaintiff's cause of action as stated in the complaint, and relies solely upon an affirmative defense, based upon facts stated in the answer, so that without evidence by defendant the plaintiff would be entitled on the pleadings to a verdict. It is very clear that the defendant here did not fulfill these requirements in its answer.

We are unable to sustain the first, second, and fourth exceptions. Certainly the conductor of the train was directed by the railway authorities to collect $105 from the plaintiffs, also to attach a car to the train assigned for the use of plaintiffs, and what the conductor said

in the exercise of these duties imposed upon him was competent evidence.

We will next inquire into the third, eighth, ninth, tenth, and eleventh exceptions. The defendant was seeking to charge the plaintiffs with a debt of $105, by proving that the conductor and baggage master had counted the passengers on the train and found that there were sixty-seven passengers above the number fixed by the contract. The plaintiffs had not counted the passengers, and by the testimony they offered were endeavoring to negative this position of the defendant by proving that no seat in the train was occupied by more than two persons, and also by showing that the receipts of money, from the sale and use of tickets by passengers on the train, did not sustain the defendant's position as to the number of passengers. The Circuit Judge, in admitting this testimony, did nothing more than to indicate that this testimony was competent; he did not pass upon its sufficiency. With this object in view, he did not err.

The fifth and seventh grounds of appeal, as to nonsuit, cannot be sustained. The plaintiffs had introduced some testimony relating to issues involved, and such being the case, it would have been reversible error if the Circuit Judge had sustained the motion for a nonsuit.

When we examine the thirteenth ground of appeal we find merit in the appeal. The Circuit Judge laid down a rule as to the time where the defendant should have raised the question with the plaintiffs as to the excess of passengers in the five coaches above the limit fixed in the contract. In his charge the Circuit Judge said more than once: "But it was the duty of the railroad, when it found that they" (the excess of sixty-seven passengers) "were there" (on board of the cars), "to demand payment at the time, and if they allowed it to go on, having their own servants and conductor there, and did not furnish a car when demand was made for it, and after demand was made for it they let them ride on, *and then when they got several*

*miles up the road, furnished another car and held them there until they paid the excess, then they would be liable for damages.*" We do not see how this proposition of law can be held entirely sound. By the contract, passengers could not be taken after the train left Charlotte, N. C., on its way to Asheville. Passengers to be allowed by the conductor to remain on the train had to bear tickets. Tickets could only be obtained from the plaintiffs. These plaintiffs had contracted with the defendant not to allow more than fifty-six passengers in each of the five passenger coaches. The discovery of the excess in passengers beyond this limit could not be ascertained by the conductor until after the train passed beyond Charlotte, N. C., on its way to Asheville, N. C. Then where is the reason in the rule laid down by the Circuit Judge? No passenger who bore a ticket could be ejected by the conductor nor by the plaintiffs, as for that matter. Why so much essence can be ascribed to the exact time of action in collecting fares by this defendant railroad, we cannot discover. The real truth of the matter is, that the plaintiffs, in their contract, did not provide for the payment of fares of their passengers beyond fifty-six in each car. We suppose the conclusion of $105 for the extra passengers was reached, because sixty-seven passengers would just more than fill one car for passengers. So, that, when the Circuit Judge ruled as he did, he practically decided the case in favor of the plaintiffs. See his concluding words in that part of his charge that we have copied herein and italicized.

The 14th, 15th, 16th, 17th, and 18th exceptions are practically covered by what we have held in disposing of the 13th.

The 19th exception becomes practically useless, as we have already determined that a new trial must be ordered.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and that the action be remanded to the Circuit Court for a new trial.