9191

CRUMLEY *ET AL.* v. SOVEREIGN CAMP W. O. W.

(86 S. E. 954.)

FRATERNAL INSURANCE.  AGENTS.  REINSTATEMENT OF SUSPENDED MEMBERS.  ESTOPPEL.

1. FRATERNAL INSURANCE—AGENTS.—Under Civil Code, sec. 2770, and the constitution and laws of the Sovereign Camp, W. O. W., secs. 69, 93, 109, 112 and 115, the clerk of a local camp is the agent of the sovereign camp.

2. FRATERNAL INSURANCE — REINSTATEMENT OF MEMBERS. — Where the agent of a fraternal insurance association accepted dues from a suspended member, and reinstated his name on the list of members, his

action was obligatory on the association, with power on its part, within a reasonable time to review his action, if there was a substantial failure to comply with the laws of the association.

3. INSURANCE—FRATERNAL INSURANCE—WAIVER OF CONDITIONS.—Civ. Code 1912, sec. 2755, declares that no subordinate body, or any of its officers, shall have power to waive any of the provisions of the laws and constitution of the association, while section 2770 provides that, where a fraternal insurance or beneficiary society has lodges, members of which are required to pay premiums to the local officers to transmit the same to the general office, then such local officers collecting the premiums shall be deemed agents of the general order. The constitution and by-laws of the Woodmen of the World declare that no officer of the Sovereign Camp or any camp shall have power or authority to waive any of the conditions on which beneficiary certificates are issued. It was also made the duty of local clerks to have charge of the accounts of the camps to make reports, and remit dues to the Sovereign Camp. The by-laws further declare that no clerk of a local camp shall have power to bind the Sovereign Camp or his camp, and require each member to pay monthly assessments. *Held* that, though it was provided that a failure to pay an assessment for over a month would work a suspension, and after ten days the member must make warranty that he is in good health before he can be reinstated, the clerk of a local camp, by collecting assessments so long due that a suspension has resulted, may bind the general insurer.

4. INSURANCE—BENEFIT INSURANCE.—PAST-DUE ASSESSMENT.—In view of the powers conferred by the general insurer on clerks of local camps, the general insurer is estopped to deny the act of the clerk in receiving such past-due assessments and to contend that the member, who died in the interim, was suspended.

5. FRATERNAL INSURANCE — ESTOPPEL. — A fraternal insurance association is estopped to repudiate the acts of its agent reinstating a suspended member on account of the agent's violation of the rules, where such repudiation would result in injury to innocent parties, who relied in good faith upon the acts of such agent.

Before MAULDIN, J., Greenville, June, 1914.    Reversed.

Action by Charles Crumley, Leo Crumley and Otis Crumley, by their guardian *ad litem,* M. M. Crumley, against Sovereign Camp of the Woodmen of the World.

FOOTNOTE.—As to waiver by officers of subordinate lodge of forfeiture for nonpayment of dues or assessments, see 4 L. R. A. (N. S.) 421, and 38 L. R. A. (N. S.) 571.

From judgment for defendant, plaintiffs appeal. The facts are stated in the opinion.

*Mr. J. J. McSwain,* for appellant, cites: Code, sec. 2770; 95 S. C. 61, 67. *Waiver by agent of compliance with laws of order, etc.:* 80 S. C. 392; 77 S. C. 531; 78 S. C. 398; 80 S. C. 407.

*Messrs. Quattlebaum & Cochran,* for respondent, cite: Code, secs. 2755, 2768, 2770; 2 Bacon, Benefit Societies 1110 and 1115, 1083; 160 Mass. 289; 35 N. E. 855. *All conditions of contract must be complied with:* 4 S. C. 321; 4 L. R. A. (N. S.) 421; 93 S. C. 88; 22 Mo. App. 127; 153 Mass. 53; 85 N. Y. 282; 2 Bacon, Benefit Societies, p. 977, sec. 389; 95 S. C. 61; 183 U. S. 308; 35 L. R. A. 643; 115 Cal. 466; 143 Mass. 435; 32 Fed. 443.

September 11, 1915.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

On the 20th of May, 1911, I. T. Crumley became a member of the Woodmen of the World in this State, and his children were named as beneficiaries in the policy of insurance for $1,000, issued to him.

He failed to pay the monthly dues for May, June and July of the year 1913, and was suspended as a member on the first of June, 1913. He sent for a physician on the 22d of July, 1913. On the 2d of August, 1913, his dues were paid for the months of May, June and July, 1913, and he received a receipt from the clerk of the local camp, who knew at that time that a physician was attending him, on account of his sickness.

The books of the clerk of the local camp, and his report to the Sovereign Camp on the 23d of August, 1913, show that I. T. Crumley was reinstated as a member on the 2d of August, 1913. On the 7th of August, 1913, the dues for

the months of August and September, 1913, were also paid. Members of the family testified, that they did not know there was no hope for his recovery, until the night before he died, which was on the 10th of August, 1913. The first notice that the Sovereign Camp received of I. T. Crumley's death, was contained in the following letter written by the clerk of the local camp on the 10th of August, 1913 :

"I am reporting the death of Sovereign I. T. Crumley. Sovereign Crumley stands suspended at that office. Sovereign Crumley made to me the necessary payments to reinstate on August 2d, and died with typhoid fever on August 10th. Sovereign Crumley was suspended on assessment No. 272 for the month of May. I have in my possession now Sovereign Crumley's dues for the months of May, June, July, August and September. I presume you will forward to us the necessary blanks to fill out and forward to that office."

The Sovereign Camp replied as follows, on the 19th of August, 1913 :

"The sovereign clerk's office has referred to our committee your letter, giving notice of the death of Sovereign Isaac T. Crumley.

This sovereign was suspended June 1, 1913, for nonpayment of May assessment No. 272, and you state that he paid you his arrearages on August 2d. Will you please inform us under the inclosed cover, whether the payment was made to you by the deceased sovereign in person, or by someone else for him; whether he was in good health at the time, and whether he complied with the requirements of sec. 115 of the laws of the order by furnishing to you the written statement and warranty, signed by himself and witnesses, that he was in good health at the time? It will also be necessary that you secure and forward to us a written statement by the attending physician, showing when the deceased was first taken ill, when the physician was called,

what was his diagnosis, and how long his treatment continued.

Immediately upon receipt of above requested information we shall be glad to give the claim further attention."

After further correspondence there was an offer by the defendant, to return all dues that had been paid in May, June, July, August and September, which was refused.

His Honor, the presiding Judge, directed the jury to render a verdict in favor of the defendant, on the ground that I. T. Crumley was under suspension as a member when said dues were accepted, and that a certificate as to health is a prerequisite to a reinstatement.

The plaintiffs appealed from said ruling.

Section 2755 of the Code of Laws is as follows:

"No subordinate body or any of its officers or members, shall have the power or authority to waive any of the provisions of the laws and constitution of the association, and the same shall be binding upon the association, and each and every member thereof and their beneficiaries."

Section 2770 of the Code of Laws is as follows:

"When any fraternal insurance or beneficiary society, order or association of this or any other State, province or territory, now or hereafter operating in this State, and having lodges, councils, chapters, branches or subordinate or branch offices, duly established and organized in this State, and when under the laws, rules or regulations of such said society, order or association, members of the same are required to pay or customarily and with the knowledge and consent of such said society, order or association, do pay premiums, dues, assessments, fines, or other payments to any other member or person for the purpose of transmitting or delivering the same to the general office, or to any division, subordinate or branch office of such said society, order or association, then such said member or person by whatever name or title known and called, so collecting such premium, dues, assessments, fines and other payments, shall be deemed

and considered the agents of such said fraternal insurance, or beneficiary society, order or association."

The constitution and laws of the Sovereign Camp contain the following provisions:

Sec. 69 (a). "No officer, employee, or agent of the Sovereign Camp, or of any camp, has the power, right or authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary or waive any of the provisions of this constitution, or these laws."

Sec. 93 (a). "It shall be the duty of the clerk to have charge of the records, attend to the correspondence, accounts, literature of the camp, and all miscellaneous matter pertaining to its welfare."

Sec. 93 (d). "He shall make all reports, mail or deliver all notices required of him by the Sovereign Camp officers, and such as are required by the laws of the order."

Sec. 93 (e). "He shall remit all funds due and belonging to the Sovereign Camp to the sovereign clerk as by law provided."

Sec. 93 (g). "The clerk of a camp shall not by acts, representations, waivers, or by vote of his camp, have power or authority not delegated to him or to the camp, by the constitution and laws of the order to bind the Sovereign Camp or his camp."

Sec. 109 (a). "Every member of this order shall pay to the clerk of his camp each month one assessment payment."
* * *

Sec. 109 (b). "If he fails to make any such payments on or before the first day of the month following, he shall stand suspended, and during such suspension his beneficiary certificate shall be void."

Section 112. "On or before the fifth day of every month, the clerk of each camp shall cause a warrant to be drawn on the banker of his camp, signed by himself and the consul commander, for all the Sovereign Camp funds in the hands of the banker then due the Sovereign Camp, and forward

said funds and all other funds due the Sovereign Camp to the sovereign clerk.

Accompanying such remittance, the clerk shall also forward such detailed statement of the standing of the members in the camp as shall be required for the information of the sovereign clerk, upon blanks furnished for that purpose."

Section 115 (a). "Should a suspended member pay all arrearages and dues to the clerk of his camp within ten days from the date of his suspension, and if in good health and not addicted to the excessive use of intoxicants or narcotics, he shall be restored to membership and his beneficiary certificate again become valid."

Section 115 (b). "After the expiration of ten days, and within three months from the date of suspension of a suspended member, to reinstate, he must pay to the clerk of his camp, all arrearages and dues and deliver to him a written statement and warranty signed by himself and witnessed, that he is in good health and not addicted to the excessive use of intoxicants or narcotics as a condition precedent to reinstatement, and waiving all rights thereto if such written statement and warranty be untrue."

From the foregoing sections of the Code of Laws, and the constitution of the order, which we have considered together, we have reached the conclusion, that the clerk of the local camp was intended to be the representative or agent of the Sovereign Camp, with certain enumerated powers hereinbefore mentioned, especially those relating to the collection and transmission of such dues, as were required to be forwarded to the Sovereign Camp. That when said agent accepted dues from a suspended member, and placed his name on the list of those restored to membership, his action was obligatory on the Sovereign Camp, in the first instance, with power on its part, within a reasonable time, to review the action of the local clerk, if there was a substantial failure on

his part, to comply with the requirements of the order.    In this way, alone, can force and effect be given to all the laws governing the order.

This seems to be the construction which the Sovereign Camp placed upon the powers and duties of the local clerk, as shown by the letter in reply to that containing notice of Crumley's death.    If such had not been the interpretation by the Sovereign Camp, it would simply have inquired, whether there was a compliance with the requirements of section 115 of the laws of the order.

There is another reason why there was error, in directing a verdict in favor of the defendant, to wit: the Sovereign Camp is estopped by the conduct of its agent, in discharging other duties besides those relating to the question of health certificate, mentioned in section 115 of the laws of the order.

The following duties were imposed upon the local clerk:

To have charge of the records, attend to the correspondence, accounts, *and all miscellaneous matter pertaining to the welfare of the camp.*

To make all reports, mail or deliver all notices, required of him by the Sovereign Camp.

*To remit all funds due and belonging to the Sovereign Camp.*

To cause a warrant to be drawn on the banker of his camp, for all the funds then due the Sovereign Camp *on or before the 5th day of every month.*

To forward with *such remittance such detailed statement of the standing of the members, as shall be required for the information of the Sovereign Camp.*

*To state in his report to the Sovereign Camp, whether a suspended member who had paid his dues, and whose name had been placed on the list of reinstated members, had delivered to him a written statement, that he was at that time in good health.    Currence v. Woodmen,* 95 S. C. 61, 78 S. E. 442.

The following cases show that the Sovereign Camp was responsible for the failure of the agent to discharge said duties: *Williamson* v. *Association,* 54 S. C. 582, 32 S. E. 765; *Wetmore* v. *McElroy,* 96 S. C. 182, 80 S. E. 266; *Mitchell* v. *Leech,* 69 S. C. 413, 48 S. E. 290, 66 L. R. A. 723; *Williams* v. *Tolbert,* 76 S. C. 211, 56 S. E. 908; *Eastern B. & L. Association* v. *Williamson,* 189 U. S. 122, 23 Sup. Ct. Reporter 527.

In the last mentioned case, the Court quotes with approval, the following language from *Vought* v. *Eastern B. & L. Assn.,* 172 N. Y. 508, 65 N. E. 496, 92 Am. St. Rep. 761.

"We deem it unnecessary at this time to determine, whether the defendant was authorized by that statute, to enter into such contracts; for if we assume, that the making of them was in excess of the express power conferred upon the corporation by that statute, still, as the contracts involved no moral turpitude, and did not offend any express statute, they were not illegal in a sense that would prevent the maintenance of an action thereon.   It is now well settled that a corporation cannot avail itself of the defense of *ultra vires,* when the contract has been in good faith fully performed by the other party, and the corporation has had the benefit of the performance of the contract.   As has been said, corporations, like natural persons, have power and capacity to do wrong.   They may in their contracts and dealings break over the restraints imposed upon them by their charters, and when they do so, their exemption from liability cannot be claimed on the mere ground, that they have no attributes or facilities which render it possible for them thus to act. While they have no right to violate their charters, yet they have the capacity to do so, and are bound by their acts, where a repudiation of them would result in manifest wrong to innocent parties, and especially where the offender alleges its own wrong to avoid a just responsibility.   It may be that while a contract remains unexecuted upon both sides, a corporation is not estopped to say in its defense, that it had not

the power to make the contract sought to be enforced; yet, *when it becomes executed by the other party, it is estopped from asserting its own wrong; and cannot plead that the contract was beyond its power.*"    (Italics added.).

Judgment reversed and new trial granted.    ·

MESSRS. JUSTICES WATTS and FRASER concur in the opinion of the Court.

MESSRS. JUSTICES HYDRICK and GAGE dissent.