May 25, 1917. The opinion of the Court was delivered by
Plaintiff appeals from judgment on verdict directed for defendant in an action on a life insurance policy. *Page 293 
On January 22, 1910, Hiram C. Sternheimer became a member of the defendant fraternal benefit association, and a certificate of membership was issued to him, wherein defendant agreed to pay his mother, the plaintiff herein, $6,300 on his death by accident, while in good standing in the order. The insured was accidentally killed September 12, 1912. Defendant refused payment on the ground that he was not in good standing at the time of his death. The constitution and by-laws of the order provide that any member who fails to pay his dues and assessments, "when and as the same become due and payable," shall immediately become a delinquent member, and the right to indemnity and benefits is thereby forfeited during his delinquency; upon payment of arrearages, he is, ipsofacto, restored to good standing, but only for indemnity and benefits thereafter accruing; that delinquent members shall be suspended at the next regular meeting of the subordinate council to which they belong, and, in default of such meeting, by the secretary-treasurer thereof, and notice thereof shall be given to the supreme secretary; but neither the failure to suspend a delinquent member nor the giving of notice of dues and assessments to delinquent or suspended members shall be a waiver of the forfeiture incurred. The difference between delinquency and suspension is that delinquent member may restore himself to good standing simply by paying his arrearages, but a suspended member is required to file a new application, and pay all arrearages and certain fines, and be restored, if at all, by vote of the council in which three adverse ballots are sufficient to reject the application. The first question is one of practice. Plaintiff alleged, interalia, that insured was in good standing at the time of his death. Defendant's answer did not deny any allegation of the complaint, but set up delinquency of insured at the time of his death, as an affirmative defense, alleging that *Page 294 
he was in arrears for dues and assessments at the time of his death.
Plaintiff's allegation that insured was in good standing was not necessary to her cause of action. Therefore she was not bound to prove it. But defendant was bound to allege and prove delinquency of insured to establish the forfeiture of the right to indemnity.Copeland v. Insurance Co., 43 S.C. 26, 20 S.E. 754;Pickett v. Insurance Co., 60 S.C. 477, 38 S.E. 160, 629;Thompson v. Insurance Co., 63 S.C. 290, 41 S.E. 464;Huguenin v. Casualty Co., 94 S.C. 138, 77 S.E. 751. If the case had been submitted on the pleadings, judgment would have gone for plaintiff. Hence defendant was entitled to open and reply. Addison v. Duncan, 35 S.C. 165,14 S.E. 305; Beckham v. Railway, 50 S.C. 25,27 S.E. 611; Thompson v. Insurance Co., supra. After hearing all the evidence offered by both parties, the Court directed a verdict for defendant. To this plaintiff excepts on the grounds that the evidence warranted a reasonable finding, first, that insured was not delinquent at the time of his death; and, second, of waiver.
This Court usually declines to enter upon a detailed discussion of the evidence in a case like this, because, as a rule, it subserves no useful purpose, except perhaps to show that it has been carefully reviewed and considered, which is done in every such case, of course, and that should be presumed. But, out of respect to the very earnest contention in argument of the learned counsel for appellant, we state the substance of the material evidence, so that its tendencies may be seen, when it is considered in the light of the controlling provisions of the constitution and by-laws of the order, which have already been stated, and the statute law of this State.
C.M. Allen testified that he was the secretary-treasurer of the subordinate council of which insured was a member during the whole period of his membership, but resigned that *Page 295 
office April 1, 1913, and moved to Atlanta, Ga., and has not since that time been connected with the order, or had any interest in it; under the laws of the order, he was the only person to whom dues and assessments could be paid; as each member paid anything, he issued and gave or sent him a receipt therefor from a receipt book in which he kept carbon copy duplicates of all receipts issued. He produced that book and read from it three receipts issued to Sternheimer. No. 3015, dated December 20, 1911, reads, "Received of H.C. Sternheimer $6.50, $2.50 dues from January 1, 1912, to July 1, 1912, $4 for indemnifying assessments 107, 108 — total $6.50," signed by himself as secretary-treasurer. The other two were on the same form. No. 4008, dated February 28, 1912, was for assessment 109, and No. 4090, dated April 5, 1912, was for assessment 110. This receipt had on it the memorandum, "Paid by Allen," which witness explained by saying that, as the time for payment of that assessment had expired, or was about to expire, he called Sternheimer over the telephone to remind him of it, and that Sternheimer requested him to pay that assessment for him, and promised to hand him the money in a day or so, which he did. Receipts were dated as issued, which was usually several days after receipt of the checks sent him by the members. All assessments were $2 each, and the members were notified of assessments by cards sent to them by the supreme secretary. The dues were $5 a year, due and payable, $2.50 January 1st, and $2.50 July 1st. The amount of dues and dates for payment thereof were fixed by a by-law, but it was the custom of the council to allow an extension of 30 days for the payment of dues, as they belonged exclusively to the local council. It was also a custom of the council to allow delinquent members to pass the time when they should have been suspended, without suspending them; but of this custom neither the supreme council nor any of its officers had any notice. The receipt book showed no other receipts issued to Sternheimer, and witness knew, as a fact, of his *Page 296 
own personal knowledge, that no other payments than those evidenced by the receipts mentioned had been made, and that Sternheimer had not paid his dues that were "due and payable" July 1, 1912, and assessments Nos. 111 and 112, levied May 16th and July 15th, the time for payment of which expired June 15th and August 14th, respectively, making his arrearages amount to $6.50, at the time of his death. He produced and read in evidence a letter from Sternheimer to him as follows:
"Charlotte, N.C., Aug. 18, 1912. Friend Allen: Please let me know at Sumter, S.C. 17 South Magnolia St., how much I owe, so I can send you check. With best regards to all the fellows. Sincerely yours, H.C. Sternheimer" — and his reply thereto, to wit:
"Aug. 24, 1912. Dear Sternheimer: Just back from the North. You are due us $6.50 for dues and assessments. Attend to this for me. Allen."
On August 26, 1912, he sent Sternheimer a circular letter, which was sent to all members of the council, in which he again called his attention to the fact that he was due the council $6.50. He saw Sternheimer in person twice afterwards, and each time, the last being the morning of the day he was injured, reminded him that he was in arrears, and Sternheimer promised each time to send him a check for the amount due, but never did so. After insured had been fatally injured, his brother, Fred Sternheimer, went to Allen, taking with him the assessment cards for assessments 111 and 112, which had been sent to the insured by the supreme secretary, and also the circular letter of August 26th, which had been sent to him by Allen, and offered to pay the arrearages, which Allen declined to receive on the ground that insured had theretofore been injured. Though susceptible of denial there was no denial of this by Fred Sternheimer, and it was admitted by plaintiff's attorney that the notification card for assessment No. 112 was found among the papers of the insured. Plaintiff, however, testified that she *Page 297 
did not find amongst his papers the letter of Allen to him dated August 24th. There was no evidence that the circular letter of August 26th and assessment card No. 111 were not found amongst his papers. Allen further testified that the receipt of December 20, 1911, was paid by a postdated check, of date January 2, 1912, which he accepted at Sternheimer's request. This check was stamped "Paid Feb. 8, 1912," and had in pencil on the corner "N.S.F.," which the cashier of the bank said was a memorandum that payment had been refused on the ground that the drawer had "not sufficient funds" to his credit when it was presented. He also testified that on December 20th Sternheimer's balance was $34.86, which was reduced by checks, paid December 20th, 21st and 22d, to $1.86, and the balance so remained until January 12th, when it was increased by a deposit of $30. The other check given to pay assessment 109 was dated February 17, 1912, and was marked "Paid March 4, 1912." They were payable to the order of C.M. Allen, secretary, and so indorsed by him.
The principal contention of plaintiff grows out of the receipt, dated December 20, 1911, and the check, dated January 2, 1912, and the inference which she claims the testimony with regard thereto is susceptible of, to wit, that the check may have been given to pay Sternheimer's dues from July 1, 1912, and later assessments than those mentioned in the receipt, it being further contended that, with respect to the truth of Allen's testimony, the jury should have been allowed to judge. That might be so, if there were anything in the evidence tending, either directly or by reasonable inference, to impeach Allen's testimony, or to warrant a finding against it. But there is not. On the contrary, it is so fully corroborated by the written evidence and all the subsequent transactions as to leave it free from the slightest doubt or suspicion. The receipt specified that it was for dues from January 1 to July 1, 1912, and for assessments 107 and 108. Following that are the receipts for assessments *Page 298 
109 and 110, the time for payment of which expired January 23 and March 25, 1912. Following those are the letter of Sternheimer of August 18th, asking how much he was then due, the reply thereto, and the circular letter of August 26th, notifying him that he was then due $6.50, which by the undisputed record evidence could have been only for dues and two assessments and the only assessments theretofore levied, for which receipts had not been issued were 111 and 112, and the only dues, those payable July 1st. Following that is the production by Sternheimer's brother, after his injury, of the circular letter and the two assessment cards for these two assessments which were evidently found amongst his papers, and the offer then to pay the amount specified therein. The testimony of plaintiff that she did not find amongst her son's papers the letter of Allen to him, dated August 24th, has not been overlooked. But that fact does not warrant the inference that Allen did not send it, or that her son did not receive it. The circular letter of August 26th, two days later, was found amongst his papers, and that gave the same information as the letter of August 24th. There was, therefore, no reason for Sternheimer to keep the previous letter. To admit that the inference above suggested by counsel for plaintiff is a reasonable one, we would have to believe that, on January 2, 1912, Sternheimer gave a check for $6.50 for his July dues and two assessments, although only one assessment, No. 109, had then been levied, and the July dues were not due for six months, and that, too, when he then had in bank only $1.86; also that, notwithstanding he had already paid assessments 109 and 110 by that check, he afterwards paid each the second time, to wit, on February 17th, and April 5th, and took receipts therefor, because these receipts specify that they were for assessments 109 and 110, respectively.
That inference would not be reasonable in the light of all the facts and circumstances stated, and to have submitted *Page 299 
that issue to the jury would have been to invite a verdict founded upon surmise, conjecture, or caprice — one wholly unsupported by evidence. This Court has said in numerous cases that juries must not be allowed to speculate or to find verdicts based upon conjecture, for Courts are moved only by material evidence, direct or circumstantial, sufficient to satisfy the mind and conscience of reasonable men of the truth of the facts upon which their action is predicated.
The burden of proving waiver was on plaintiff. Copeland
v. Insurance Co., supra. The facts relied upon as evidence of waiver have already been stated, to wit, the custom of the local council and its officers of allowing members to pass the period of suspension for nonpayment of dues and assessments without suspending them and notifying the supreme secretary thereof. There are two reasons why this cannot be held to show waiver:
(1) The constitution and by-laws of the order expressly provide that it shall not constitute waiver. That was a part of the contract, agreed to by the insured and binding upon him and his beneficiary. Section 2755, Civ. Code 1912, provides, with respect to a fraternal benefit association, that:
"No subordinate body or any of its officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the association, and the same shall be binding upon the association, and each and every member thereof and their beneficiaries."
(2) There was no evidence tending to show that the supreme council, or any of its officers, had notice of the custom.
In Vant v. Grand Lodge, 102 S.C. 413, 86 S.E. 677, the statute above quoted was said to have been designed —
"To prevent the waiver of violations of the law of such associations by the local bodies, their officers or members, in favor of their own members — as a result of the fraternal *Page 300 
feeling or sympathy which the members of such local orders, being more closely associated together, naturally entertain for each other — at the expense and to the detriment of the entire membership of the order."
And, further, that:
"Notwithstanding the local lodge may be the agent of the grand lodge for some purposes, it is within the power of the legislature to enact that such agent shall not have authority to relinquish the rights of the principal, and it has so enacted in the section quoted. With the wisdom or policy of the enactment, the Court is not concerned. The members of these orders are presumed to know their own laws, as well as those of the State, under which their rights must be determined."
The facts of this case differentiate it from the case ofCrumley v. Sovereign Camp, 102 S.C. 386, 86 S.E. 954. In that case the clerk of the local camp, who was held to be the agent of the Sovereign Camp, accepted payment of the arrearages and reinstated the member before his death. In this case the secretary-treasurer refused to accept them. Clearly, therefore, there was in this case no waiver by the conduct of the secretary-treasurer in accepting payment of arrearages. To hold that the failure of that officer or of the local council to suspend delinquent members was a waiver would be to abrogate the constitution and by-laws of the order and the statute of the State.
Defendant's second defense is based upon a provision of the constitution of the order that no action shall be brought to recover any sum alleged to be due from the order, unless it is commenced within six months after the claim was disallowed. This action was not brought within the time specified. But this defense cannot be sustained, because it conflicts with subdivision 7 of section 137 of the Code of Civil Procedure, which provides that actions on life or fire insurance policies may be brought within six years from the accrual of the cause of action, "any clause *Page 301 
or condition in the said policies or limitations therein contained to the contrary notwithstanding." The purpose of the legislature was to avoid such stipulations in policies of insurance; and, although there are other provisions of the statutes to the effect that the constitution and laws of fraternal benefit associations shall be binding upon the members thereof, and that the general insurance laws of the State shall not apply to such associations, unless specifically made applicable thereto, these provisions, when construed together, and in connection with previous and subsequent legislation on the same subject, show that the legislature did not intend to except the policies of these associations from the provisions of subdivision 7 of section 137 of the Code of Civil Procedure.
The judgment of this Court is that the judgment of the Circuit Court be affirmed.
MESSRS. JUSTICES WATTS and GAGE concur in the opinion of the Court.