ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA
v. BELUE.

(Circuit Court of Appeals, Fourth Circuit.    October 7, 1919.)

No. 1736.

1. INSURANCE ⬤⟹750—NO LIABILITY ON DEATH OF MEMBER IN ARREARS.
    A benefit association *held* not liable on death of a member from an
    injury received when he was several months in arrears for dues and
    assessments, where its constitution and the certificate expressly provided
    that any member in arrears should by virtue thereof stand suspended
    from the right to any benefit or indemnity, and that on restoration to
    good standing the association should not be liable on account of any
    accident or injury received during the time of suspension.

2. INSURANCE ⬤⟹755(1)—FORFEITURE FROM NONPAYMENT OF DUES NOT WAIVER.
    A benefit association, by receiving dues from and reinstating a de-
    linquent member then suffering from an injury which caused his death,
    but which was unknown to the officer receiving the money, *held* not to
    have waived a condition of the contract exempting it from liability on
    account of injury received by a member while suspended for delinquency.

In Error to the District Court of the United States for the West-
ern District of South Carolina, at Greenville.

Action by Mary Lucile Belue against the Order of United Com-
mercial Travelers of America. Judgment for plaintiff, and defendant
brings error. Reversed.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

Henry K. Osborne, of Spartanburg, S. C. (Bomar & Osborne, of
Spartanburg, S. C., and John A. Millener, of Columbus, Ohio, on the
brief), for plaintiff in error.

John Gary Evans, of Spartanburg, S. C. (I. C. Blackwood, of
Spartanburg, S. C., on the brief), for defendant in error.

KNAPP, Circuit Judge. Plaintiff in error, defendant below and
hereinafter so called, is a fraternal benefit association, organized un-
der the laws of Ohio, and having its main office at Columbus in that
state, where its affairs are managed by a governing body known as
the Supreme Council. Subject to the Supreme Council are certain
Grand Councils, which have jurisdiction in their several defined
territories, and subject to both the Supreme and Grand Councils are
the local and subordinate councils, whose territories and powers are
prescribed by the Supreme and Grand Councils. The rights, privi-
leges, and duties of members of the order, and the obligation of the
order to its members, are fixed by the statutes of the incorporating
state, and of other states in which the order may operate, and by the
constitution and by-laws adopted in pursuance thereof. These make
provision for the maintenance of a fund, by assessments charged
upon and collected from members, to indemnify them for death or
disability resulting from accidental means; and such members are
indemnified, if in good standing, to the amount named in certificates
issued to them in accordance with the constitution and by-laws. To

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

an extent at least the order is a secret organization; and the subordinate or local councils are the ones that receive members, confer "degrees," collect membership dues, and the like. They also collect for the Supreme Council all assessments for the insurance or indemnity fund. As we understand the matter, each local council has the exclusive right to manage its own financial affairs, retains all moneys paid in for membership dues, and disposes of the same without control by the Supreme Council. On the other hand, the local councils have nothing to do with the insurance of members against accident, or with the settlement and payment of claims arising from such insurance, save as instrumentalities for the collection of assessments. It also appears that an eligible person may join the order for fraternal purposes only, without becoming an insured member, but if an insured member ceases to be a fraternal member his insurance is canceled.

In April, 1912, John Theron Belue joined the local council at Spartanburg, S. C., became an insured member of the order, and received a certificate. This certificate was afterwards surrendered, and a new certificate issued, for reasons not now material, under date of January 2, 1914. His wife, Mary Lucile Belue, plaintiff herein, was named the beneficiary. He died April 24, 1917, from the effects, as her complaint alleges, of an accidental wound upon his nose five days before. The defendant denied liability, and this suit was brought.

The first defense set up in answer, and here claimed to have been established at the trial, is "that the death of the deceased was not the result of external, violent, and accidental means, producing bodily injury, as the proximate, sole, and only cause of death, and that there were no visible marks upon the body of any such accidental injury, and that .if the death was due to infection there was no such visible wound," as required by the contract of insurance. Belue died of erysipelas, which plaintiff asserts, and defendant denies, was caused by a wound on the nose. To this issue most of the testimony was directed, much of it conflicting, and doctors as usual disagreeing. It is not deemed needful to review the opposing proofs, or otherwise discuss this dispute, as the case in our opinion turns on another question. We shall therefore assume, though without so deciding, that the evidence relating to the cause of Belue's death was properly submitted to the jury, and warranted their finding in plaintiff's favor.

[1] The defense now to be considered is based upon certain provisions in the constitution of the order, which by the terms of the certificate is made a part of the insurance contract. Among these, under the general heading of "Insurance," are the following:

"Article VII, Sec. 3. If any insured member fails to pay any or all of the fees, fines, costs, dues or assessments charged or levied against him as a member or as an insured member of this order when and as the same become severally due and payable, he shall immediately on the happening of such default and by virtue thereof become delinquent and cease to be in good standing as an insured member, and he and every person claiming by, through or under him or his membership or his certificate of insurance at the time

such default occurs and by virtue thereof shall be suspended from any and all rights to indemnity or benefits of whatever character under or through this article. Should such delinquent member at any time regain his good standing as an insured member in the order, his restoration thereto shall in no wise operate to entitle him or anyone claiming by, through or under him or his membership or his certificate of insurance, to indemnity or benefits on account of any accident or injury received by him while not in good standing or on account of death resulting therefrom. .

"The sending of notices of any assessments, fees, fines, costs or dues, or making demand for the same, shall not constitute or be held a waiver of such suspension, nor shall the fact that his certificate of insurance or of membership has not been duly canceled be considered a waiver of such default."

"Article VII, Sec. 14. The forwarding of blanks for the purpose of proofs as above provided, or the investigation of any claims by a member or officer of the order or any one authorized to represent the order, or the holding of any autopsy by anyone representing the order, shall not constitute or be a waiver of any right or of any defense which the order may have against any claim made against it, and the making of proofs or filing of notices shall be at the claimant's expense. * * *

"No knowledge or information obtained by or furnished to any officer or member of any subordinate, Grand or Supreme Council of the order, except the Supreme Secretary of the order, shall be held or construed to be knowledge of or notice to the order."

"Article VII, Sec. 17. No Grand or Subordinate Council, officer, member or agent of any subordinate, Grand, or the Supreme Council of the order is authorized or permitted to waive any of the provisions of the constitution of this order relating to insurance as the same are now in force or may be hereafter enacted."

The substance of the foregoing provisions appears in the certificate issued to Belue.

The facts to be stated in this connection are practically undisputed. For a year or more after January 2, 1914, when he received the certificate in suit, Belue paid his dues and assessments with reasonable promptness. In June, 1916, however, he was suspended for failure to pay certain dues and assessments which had theretofore accrued. He was reinstated on August 12th following, when he paid the amount for which he was then in arrears. No payment was made by him after that date. On April 19, 1917, the day he is alleged to have met with the accident that caused his death, and for some time before, he was in arrears for quarterly dues for three quarters, amounting to $3, and for four assessments of $2 each, and had been repeatedly notified of his delinquency. On April 20 the secretary of the local council, one J. B. Reid, wrote Belue as follows:

"I have mailed you several statements regarding your dues and assessments, amounting to $11, which are past due. As long as these remain unpaid, your beneficiaries have no protection from the order in case of your accidental disability or death. Kindly mail your check at once covering the above amount."

This letter was opened by Belue's father, with whom Belue and his wife lived. On the following day the father carried the letter, with his own check for $11, to Reid's office, and, not finding him there, left the letter and check on a desk, where Reid discovered them on his return. Reid was not personally acquainted with Belue and had no knowledge of his illness. Accordingly he took the check, which was later deposited in bank, and at once mailed to Belue the

regular official receipt. It seems evident that Belue was then in a desperate condition; he died three days afterwards. In the following month, when the actual circumstances had been disclosed, the amount of the check was tendered back to the father, and upon his refusal to accept the same the tender was kept good by payment into court. The testimony shows beyond dispute that the members of the Supreme Council, including the Supreme Secretary, who appears to have entire charge of such matters, were wholly ignorant of the facts above recited, until they were ascertained by Dr. Taylor, the Supreme Surgeon, who went to Spartanburg some time in May for the purpose of making an investigation.

[2] The case comes at once to a question of waiver. Plaintiff contends that the acceptance of the father's check by Reid, the local secretary, though in ignorance of Belue's illness, or of any claim that he had suffered an accident, operated nevertheless to restore the insured to "good standing" in all respects, and to give him the status of a member who had not been delinquent. We are unable to sustain this contention. The certificate issued to Belue, reproducing a provision of the constitution authorized by the laws of Ohio and of South Carolina, contains the unqualified statement that "no officer, member or agent of any subordinate, Grand, or the Supreme Council of this order, is authorized or permitted to waive any of the provisions of the Constitution of this order relating to insurance as the same are now in force or may be hereafter enacted." And the constitution provides in most explicit terms, repeated in the certificate, that if any insured member fails to pay his dues and assessments as and when they become payable, "he shall immediately on the happening of such default and by virtue thereof" cease to be in good standing and be suspended from all benefits and rights to indemnity, and that if such delinquent should at any time regain his good standing as an insured member, "his restoration thereto shall in no wise operate to entitle him, or any one claiming by, through or under him, or his membership or his certificate of insurance, to indemnity or benefits on account of any accident or injury received by him while not in good standing, or on account of death resulting therefrom."

The facts established at the trial permit no doubt of the full application of these provisions. It is virtually conceded, and surely cannot be denied, that the cause of Belue's illness and death, whatever it was, antedated by some days at least the payment made by his father. When that payment was unwittingly accepted, Belue had been in default for several months, and "by virtue thereof" had forfeited all rights to indemnity under the insurance contract. True, he had not been formally "suspended," apparently because the local council had neglected its duty, and so for argument's sake it may be assumed that Reid's acceptance of the check on the 21st of April operated to reinstate Belue in good standing as an insured member from and after that date. By no valid process of reasoning can the transaction be given any greater effect. That it was not and could not be retroactive, to the extent of creating liability for an accident

which happened during the period of delinquency, seems too plain for serious question.

The whole argument of plaintiff is conclusively answered, as we think, by the fact that Belue was not insured at the time he is alleged to have received an injury, because he was then in arrears of long standing, and that no after payment to the local secretary, or even to the Supreme Council itself, could revive his insurance as against an accident occurring in the meantime. Not only does the contract expressly so declare, but it also declares in clearest terms that no officer or agent of the order shall have authority or be permitted to waive its provisions. In our judgment the local secretary, whether acting in that capacity or merely as a collecting agent for the Supreme Council, was wholly without power, by anything he did or could do, to relieve Belue from the consequences of his default, or to estop the defendant from denying liability because of that default. To hold otherwise would be to set at naught the basic provisions of the constitution, and to imperil the stability and usefulness of the order by making it responsible, in such circumstances as are here disclosed, for the mistakes and negligence, and even the bad faith, of local officials. The claim of waiver must be rejected.

This conclusion appears to be supported by practically unanimous authority. Indeed, the decisions are so little in conflict that quotation would hardly be appropriate. In Northern Assurance Co. v. Building Association, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213, reviewing a great number of cases, and frequently cited, this subject of waiver is elaborately discussed. The principle there announced was soon after applied to a case directly in point, Modern Woodmen of America v. Tevis, 117 Fed. 369, 54 C. C. A. 293. Among many others of striking similarity are Maryland Casualty Co. v. Campbell, 255 Fed. 437, 166 C. C. A. 513, Fee v. Nat. Masonic Ass'n, 110 Iowa, 271, 81 N. W. 483, Crosby v. Vermont Accident Ins. Co., 84 Vt. 510, 80 Atl. 817, Gagne v. Mass. B. & I. Co., 78 N. H. 439, 101 Atl. 212, and Nat. Life & Accident Co. v. Reams (Tex. Civ. App.) 197 S. W. 332.

If Currence v. Sovereign Camp W. O. W., 95 S. C. 61, 78 S. E. 442, and Crumley v. Sovereign Camp W. O. W., 102 S. C. 386, 86 S. E. 954, are of contrary import, as plaintiff contends, the same cannot be said of Vant v. Grand Lodge K. of P., 102 S. C. 413, 86 S. E. 677, and Sternheimer v. O. U. C. T. A., 107 S. C. 291, 93 S. E. 8, more recently decided. We are satisfied, after careful examination of all these cases, that the Supreme Court of South Carolina, upon the facts here of record, is not at variance with the views expressed in this opinion.

It follows that the judgment must be reversed, and the cause remanded, with instructions to grant a new trial.

Reversed.