## 10843

### WEATHERS v. SOVEREIGN CAMP, W. O. W. .

#### (112 S. E. 44)

1. INSURANCE—BENEFIT SOCIETY COULD NOT TAKE ADVANTAGE OF LOCAL CLERK'S STATEMENT THAT MEMBER WAS REINSTATED WITHOUT REQUIRING COMPLIANCE WITH LAWS.—Under Civ. Code 1912, §§ 2755, 2770, clerk of a local camp of a fraternal benefit society was its representative or agent in collecting and transmitting dues, and it could not profit by his wrongful notice to a member, upon payment of dues by the member with the indication of a desire to be reinstated, that he had been reinstated, without calling his attention to the requirements of the laws for a certificate and warranty of good health, as the omission to call his attention thereto, if intentional, was a fraud on his rights, and, if merely a mistake, the society could not profit by his error.

2. EVIDENCE—INSURANCE—PRESUMPTION THAT LETTER WAS RECEIVED IN DUE COURSE OF MAIL; WHETHER LETTER WAS RECEIVED WITHIN 10 DAYS AFTER MAILING HELD A QUESTION FOR THE JURY.—There was a presumption that a letter sent the sovereign camp of a fraternal order by its local clerk, and stating that a member had been reinstated, was received in due course of mail; and, where it was mailed on February 7th, it was a question for the jury whether it was not received until the 17th, as claimed by the society.

Before TOWNSEND, J., Laurens, April, 1921. Reversed and remanded.

Action by D. Y. Weathers against Sovereign Camp, Woodmen of the World. From directed verdict for defendant plaintiff appeals.

The grounds of defendant's motion for a directed verdict were as follows:

First. It is undisputed from the testimony that the deceased was in arrears for the month of December, 1919, and continued in arrears until the 3rd day of February, 1920, at which time he paid to the local camp clerk an amount covering the dues for the months of December and January, and thereby attempted to reinstate himself. He failed to comply with the constitution and by-laws of the defendant association in this respect; he failed to file with the clerk a written statement and cer-

tificate duly signed that he was in good health, and warranting that he would remain so for 30 days afterwards. By virtue of that failure, he was not in good standing when he died, and therefore his beneficiary is not entitled to anything.

Second.    Under the constitution and by-laws, in order for one having been suspended to be reinstated in full, he must not only file a certificate that he is in good health, but he must actually continue in good health for 30 days afterwards.    It appears that this deceased did not continue in good health, but on the contrary, took sick on the 8th day of February and stayed sick until the 15th day of February, at which time he died.

For the further reason, that the evidence fails to show any waiver of the forfeiture, fails to show any waiver of the failure to live up to the constitution and by-laws.

I add this as part of the grounds: It is undisputed fact that the deceased was suspended by provision of the constitution and by-laws on January 1, 1920, suspended automatically. In order to regain membership it was necessary that he do certain things to comply with the by-laws. This he did not comply with, by reason of his failure to file a certificate of good health and warranting that he would continue in good health for thirty days and his failure, as a matter of fact, to continue in good health; and then for the additional reason that there is no evidence of any waiver of that failure, and no evidence of waiver of the forfeiture.

The Court after hearing arguments for and against the motion, ruled as follows:

Court: Under the view I take of the contract, when the insured paid his back dues on the 3d day of February, 1920, and applied for reinstatement, it was upon the condition specified in Sections 65 and 66 of the constitution and by-laws of the Sovereign Camp. These by-laws pro-

vide that the reinstatement shall not be effective unless the member be in good health at the time and continue in good health for 30 days. As the insured died within that period, the condition upon which he was reinstated was violated, and his beneficiary is not entitled to recover. For these reasons, the jury is directed to find for the defendant.

Exhibit D was as follows:

The constitution, laws, and by-laws of the Woodmen of the World as amended July, 1919, contained amongst others the following provisions:

Section 63 (a). Every member of this society shall pay to the clerk of his camp one annual assessment or one monthly installment of assessment as required in Sections 60 or 61, which shall be credited to and known as the Sovereign Camp fund, and he shall also pay such camp dues as may be required by the by-laws of the camp. He shall pay any additional Sovereign Camp fund and camp dues, or either, which may be legally called.

(b) If he fails to make any such payments on or before the last day of the month, he shall stand suspended, and during such suspension his beneficiary certificate shall be void.

Section 64. A member suspended for nonpayment of assessments or dues is not entitled to any benefits of this society. He shall not be entitled to receive the passwords or to participate in any of the business or social proceedings of the camp. He may be admitted at a meeting only to pay his arrearage and must retire if he fails to do so.

Section 65. No suspended member shall be reinstated whose health is at any time impaired, or becomes impaired within thirty days after any attempted reinstatement, etc.

Section 66 (a). Should a suspended member pay all arrearages and dues to the clerk of his camp within ten days from the date of his suspension, and if in good health at the time and continue in good health for thirty days thereafter, and not addicted to the excessive use of intoxicants or narcotics, he shall be reinstated and his beneficiary certificate again become valid.

(b) After the expiration of ten days and within three months from date of suspension of a suspended member, to reinstate, he must pay to the clerk of his camp all arrearages and dues and deliver to him a written statement and warranty signed by himself and witnessed that he is in good health at the time, and will continue in good health for thirty days thereafter, and not addicted to the excessive use of intoxicants or narcotics as a condition precedent to reinstate and waiving all rights hereto if such written statement and warranty be untrue.

(c) Any attempted reinstatement shall not be effective for that purpose unless the member be in fact in good health at the time and continue in good health for thirty days thereafter, and if any of the representations or statements made by the said applicant are untrue, then said payments shall not cause his reinstatement nor operate as a waiver of the above condition.

Section 82. *Waivers*. (a) No officer, employee or agent of the Sovereign Camp, or of any camp, has the power, right or authority to waive any of the conditions upon which beneficiary certificates are issued, or to change, vary or waive any of the provisions of this constitution, or these laws, nor shall any custom on the part of any camp or any number of camps—with or without the knowledge of any sovereign officer—have the effect of so changing, modifying, waiving or foregoing such laws or requirements. Each and every beneficiary certificate is issued only upon the conditions stated in and sub-

ject to the constitution and laws, then in force or there-after enacted.

(b) The constitution and laws of the Sovereign Camp of the Woodmen of the World now in force, or which may hereafter be enacted, by-laws of the camp now in force, or which may be hereafter enacted, the application and certificate shall constitute a part of the beneficiary contract between this society and the member.

Section 109 (g). The clerk of a camp shall not by acts, representations, waivers, or by vote of his camp, have any power or authority not delegated to him or to the camp by the constitution and laws of this society to bind the Sovereign or his camp.

Plaintiff's exceptions and grounds of appeal:

First: It is respectfully submitted that his Honor, the presiding Judge, erred in directing a verdict for the defendant:

(a) When the testimony clearly showed that T. E. Weathers, the insured, on the 3d day of February, 1920, paid his dues for December, 1919, and January 1920, to the clerk of the local camp, and was reinstated and entitled to all of the benefits of the Sovereign Camp, Woodmen of the World, and his beneficiary certificate by said reinstatement again became valid.

(b) When the testimony clearly showed that the defendant, the Sovereign Camp, Woodmen of the World, received from the clerk of the local camp the monthly report for January, 1920. Said report having date February 7, 1920. Said report showing that T. E. Weathers had been reinstated and included his dues for the month of December, 1919, and for the month of January, 1920.

(c) When the testimony clearly showed that the defendant, the Sovereign Camp, Woodmen of the World, retained the money paid by the insured, Troy E. Weathers, for December, 1919, and January, 1920, and also retained

the money paid for Troy E. Weathers for dues for March, 1920, and never refunded, or offered to refund, the said moneys until after the commencement of this action.

Second. It is respectfully submitted that his Honor erred in directing the jury to find a verdict for the defendant when the testimony clearly showed that the defendant, the Sovereign Camp, Woodmen of the World, had waived its rights to have the insured at the time of his reinstatement to deliver to the clerk of his local camp a written statement and warranty signed by the insured and witnessed that he was in good health at the time, and would continue in good health for 30 days thereafter, etc.

Third. It is respectfully submitted that his Honor, the presiding Judge, erred in directing the jury to find a verdict for the defendant when the testimony clearly showed that the plaintiff's failure to file a certificate of good health and warranty that he would continue in good health for 30 days, and his failure as a matter of fact to continue in good health, had been waived by the defendant, Sovereign Camp, Woodmen of the World.

Fourth. That his Honor, the presiding Judge, erred in directing the jury to find a verdict for the defendant, when the testimony clearly showed that the Sovereign Camp, Woodmen of the World, was estopped by the conduct of its agent, the clerk of the local camp, in reinstating the insured to membership in the order.

Fifth. That his Honor, the presiding Judge, erred in not submitting to the jury the question as to whether or not the defendant had waived its rights to insist that the insured had failed to comply with the provisions of the by-laws and constitution set up by way of defense; it being respectfully submitted that there was some testimony to go to the jury on the question of waiver.

*Messrs. Richey & Richey* and *Featherstone & Knight,* for appellant, cite: *Forfeitures are not favored*: 102 S. C. 115. *Local agent was agent of Sovereign Camp, and could bind it*: 102 S. C. 386; 116 S. C. 360. *Retention of unearned premium evidence of waiver*: 104 S. C. 404; 103 S. C. 284; 97 S. C. 375; 107 S. C. 393; 95 S. C. 61; 96 S. C. 375.

*Messrs. Bomar, Osborne & Brown,* for respondent, cite: *Validity of reinstatement provisions*: 80 S. E. 545; 114 N. Y. Supp. 480; 89 Atl. 301; 47 Atl. 257; 69 N. E. 707; 25 L. R. A. (N. S.) 78. *Receipt of past due premiums after loss is no evidence of waiver:* 14 R. C. L. 1193; 15 L. R. A. (N. S.) 471; 51 L. R. A. (N. S.) 261; 25 L. R. A. (N. S.), 3; 55 S. C., 450; 70 S. C., 82. *Defendant must have had knowledge of forfeiture before there can be waiver:* 84 S. C. 95; 83 S. C. 264. *Delivery of policy after loss, no waiver:* 68 S. C. 391. *Acts of local clerk do not amount to waiver:* 102 S. C. 413; 107 S. C. 291: 263 S. W. 502.

February 29, 1922.

The opinion of the Court was delivered by Mr. Chief Justice Gary.

This action was commenced on the 25th day of May, 1920, and is for the recovery of $1,000 on a certificate, issued by the defendant to Troy E. Weathers, on the 29th day of June, 1916, for the benefit of D. Y. Weathers, the plaintiff. The appeal is from an order directing a verdict in favor of the defendant.

Troy E. Weathers was suspended for failure to pay his monthly dues for December, 1919, and January, 1920, but he was reinstated on the 3d day of February, 1920. The dues were sent by the insured to the clerk of the local camp, in a letter dated the 2nd day of February, 1920.

The local clerk sent him a receipt for the dues, and a notice that he had been reinstated, in a letter dated the 3d day of February, 1920. The insured was reinstated on the books of the local camp, and on the 7th day of February, 1920, the local clerk forwarded his report to the clerk of the Sovereign Camp, stating that the insured had paid all his dues on the 3d day of February, 1920, and that he had been reinstated as a member. The defendant claims that the letter sent on the 7th of February, 1920, was not received until the 17th day of that month, after the death of the insured, who died on the 15th of the month.

There was testimony to the effect that the Sovereign Clerk not only received the dues for the months of December, 1919, and January, 1920, but also for the month of February, 1920, after the death of the insured. There was no offer on the part of the defendant to return the dues, either for the months of December or January or February—the last mentioned being paid on the 10th of March, after the death of the insured. On the 2d of March, 1920, notice of the insured's death was sent to the Sovereign Camp. On the 17th of May, 1920, the defendant was notified by the attorneys of the plaintiff that the claim under the said certificate had been placed in his hands for collection, to which the defendant made no reply. The receipt contained this provision:

"If any of the sums herein receipted for are paid, for the purpose of reinstating the sovereign so paying, the same are received upon the express condition and agreement that they shall be held in trust for him, until all the requirements of the laws of the society in relation to reinstatement have been complied with; that the payment and the giving of this receipt shall not be a waiver of such requirements, and that he has no claim upon this society, until he has fully complied therewith."

On the 22d of June, 1920, after this action had been commenced, the defendant's attorneys sent to the clerk of the Court for Laurens County a check for $1.92, which did include all the dues paid to the defendant.

By consent the following certificate of Mrs. Pittman, a sister of the insured, was read to the jury:

"This is to certify that Mr. T. E. Weathers was taken sick at my house on the 8th day of February, 1920, and was sick eight days, and died on the 15th of February, 1920. He was taken with influenza and was sick six days, and on the 7th day he developed flu-pneumonia, and died on the eighth day of his sickness. He was in good health until he taken the influenza, and worked every day until he was taken sick."

At the close of all the testimony, the defendant's attorneys made a motion for the direction of a verdict.

The grounds of the motion, the order of his Honor, the presiding Judge, the plaintiff's exceptions, and Exhibit D, containing certain provisions of the constitution and by laws of the defendant, will be reported.

There are only two questions involved:

First. Was there error on the part of the Circuit Judge, in directing a verdict for the defendant, on the ground that the insured failed to file with the local clerk a written statement and certificate, signed and witnessed, that he was in good health, and warranting that he would remain so, for 30 days after payment of his dues?

Second. Was there error in the refusal to submit to the jury the question of waiver?

Section 2755 of the Code of Laws, 1912, is as follows:

"No subordinate body or any of its officers or members, shall have the power or authority to waive any of the provisions of the laws and constitution of the association, and the same shall be binding upon the association, and each and every member thereof and their beneficiaries."

Section 2770, Id., contains these provisions:

"When any fraternal insurance or beneficiary society, order or association of this or any other State, province or territory, now or hereafter operating within this State, and having lodges, councils, chapters, branches or subordinate or branch offices duly established and organized in this State, and when under the laws, rules or regulations of such said society, order or association, members of the same are required to pay or customarily and with the knowledge and consent of such said society, order or association, do pay premiums, dues, assessments, fines, or other payments to any other member or person for the purpose of transmitting or delivering the same to the general office, or to any division, subordinate or branch office of such said society, order or association, then such said member or person, by whatever name or title known and called, so collecting such premiums, dues, assessments, fines and other payments, shall be deemed and considered the agents of such said fraternal insurance, or beneficiary society, order or association."

The defendant in its answer alleges:

"That this defendant had no knowledge of the facts hereinabove set forth, until after the death of the said Troy E. Weathers, and that as soon as it discovered said facts, it offered to refund the amount that was paid to the local clerk, and, as evidence of its good faith, has deposited the amount thereof with the clerk of this Court, to be retained by him as a continuing tender, to be paid over to whomsoever the Court may direct."

Let us see if there was testimony which rendered it necessary to submit this question to the jury.

A. H. Walker, a witness for the defendant, testified as follows:

"I live at Kershaw. Am a mill man. Am overseer of the weave room. I lived at Columbia, and was clerk for

the Woodmen of the World there for six months. I was clerk the latter part of 1919 and the early part of 1920. I did not know Mr. Troy E. Weathers personally. He lived outside of Columbia. His mail came from Charlotte, N. C. As local clerk, I received the dues and assessments paid by the members from month to month —they were paid to me—I was the only officer who received the dues and assessments. Troy E. Weathers did not pay his assessments for December, 1919, by the 1st of January. He did not pay his assessment for January, 1920, prior to February 1st. He paid his assessment for December, 1919, and January, 1920, on February 3, 1920. He paid in the form of a money order—sent money order through the mail February 3d. He did not furnish me at any time with any written statement, signed and witnessed, that he was in good health, and warranting that he would remain in good health for 30 days after. I have the letter I received from Mr. Weathers that came with the money order (witness hands letter to counsel). Mr. Osborne offered in evidence letter from Troy E. Weathers to A. H. Walker, dated February 2, 1920, marked Exhibit E. This letter came in this envelope. I suspended Mr. Weathers on the December report, which I sent in; as near the 5th of January as possible, we sent in the report for December. I made a monthly report to the Sovereign Clerk. These reports showed when a member was suspended. (Report produced in evidence). I made out that report. I sent it to the Sovereign Clerk, Jno. T. Yates, at Omaha, Neb. I have the cash book of the local Palmetto Camp (book produced). If you will examine this book, you will observe assessments 12 and 1 on February 3d, in reference to Troy E. Weathers, Assessment 12 was for the month of December, 1919. Assessment No. 1 was for January, 1920. Mr. Osborne offered a page of the cash book in evidence, marked Exhibit G."

Exhibit G is as follows:

"Exhibit G. A copy of a page of the Palmetto camp clerk's cash book:

"February 3, 1920.   Weathers, T. E.   Old rate. Assessment No. 12, Sovereign Camp fund, $0.96.   Camp dues $0.35.   Total, $1.31.

"Assessment No. 1.   Total, $1.31.

"March 10th.   Weathers, T. E.   Old rate.   Assessment No. 3.   Sovereign Camp fund, $0.96.   Camp dues, $0.35. Total $1.31."

Exhibit F is as follows:

"North Charlotte, N. C., Feb. 2, 1920.

"Mr. A. H Walker, Dear sir:

"Inclosed you will find 2 months' dues at old rates. Want you to write at once and explain No. 4 option to me. I don't quite understand it.   These Woodmen of the World up here are not signing those papers, *and I want to know what I am doing before I do it.   So, let me hear from you at once.*

(Italics added.)                    Yours as ever,

T. E. Weathers."

Continuing, the witness said:

"The entry dated March 10th is for monthly dues that came from Laurens.   A check on the clerk of Court of Laurens County.   Some one writing in the interest of D. Y. Weathers.   I have not that report.   He sent the monthly dues.   On March 10th D. Y. Weathers sent a check from the clerk of the Court for $1.31.   That was the March after his death.   I think that check was cashed. I do not know what became of the proceeds of it. * * * After I received the money from Mr. Weathers on February 3, 1920, I made a report to the Sovereign Clerk. (Report introduced).   This is January report No. 1. That was made February 7th.   In that report I reported Mr.

Weathers reinstated. * * * In accordance with that, I notified the Sovereign Camp of his reinstatement so far as I was concerned. I marked Mr. Weathers suspended for the nonpayment of December dues on my report. On February 3, 1920, I received his December, 1919, dues and his January, 1920, dues, and marked him reinstated, and sent Mr. Weathers that receipt, notifying him that he had been reinstated. Afterwards, on March 10, 1920, I received from some one a check for $1.31 due for T. E. Weathers, old rate. I think the check was cashed, and I sent the money to the Sovereign Camp—if I remember correctly."

John T. Yates, a witness for the defendant, thus testified:

"I reside in Omaha, Douglas County, Neb. My occupation is Sovereign Clerk ex officio secretary of the Sovereign Camp of the Woodmen of the World; have held such position for the past 29 years continuously. My duties in respect to the defendant society are: I am the chief corresponding, recording, and accounting officer of the defendant—all remittances to the Sovereign Camp are made to me—camp clerks' reports are sent to me; death notices and correspondence with reference to death claims are delivered to me. * * * On February 17, 1920, I received the report from the clerk of the local camp, making a remittance for the said Troy E. Weathers, and also listing his name for reinstatement, but I did not receive this report until after the death of the said Weathers. When I was advised of the death of Weathers, I turned the matter over to D. E. Bradshaw, the general attorney of the defendant society, for investigation. I did not accept the remittance which accompanied the former report, but as soon as it could be reached in the regular course of business, it was held by me pending the investigation by D. E. Bradshaw, the general attorney on the question of liability."

D. E.. Bradshaw, a witness for the defendant, testified as follows:

"I reside in Omaha, County of Douglas, State of Nebraska. I am the attorney general for the defendant, Sovereign Camp, Woodmen of the World, and have been such for nearly four years last past. Sovereign Clerk Jno. T. Yates referred to me the papers in reference to the death of Troy E. Weathers, for investigation. While I was continuing my investigation, suit was instituted. As soon as I determined that there was no liability because the member died within 30 days after his attempted reinstatement, I directed the Sovereign Clerk to return the money paid for December, 1919, and January, 1920, and any other assessments received by him. A check for this amount was sent to Bomar & Osborne, who had been selected to represent the defendant in the suit. * * * I do know that the remittance was not accepted, for the reason that it was held during my investigation to determine whether or not there was any liability, and as soon as I determined that matter and found there was no liability, I directed the money returned to whomsoever was entitled to it. In the meantime, suit had been brought, and it was necessary to notify the clerk of the Camp No. 759 that remittance had not been accepted. The remittance was not returned before the suit was instituted. That had been fully explained in the deposition of Jno. T. Yates, showing the condition of the office and inability of myself to determine whether or not there was any liability. It was returned as soon as we discovered there was no liability, but in the meantime suit was instituted."

There was no material difference between the facts as to the agency in the present case and *Crumley v. Sovereign Camp, Woodmen of the World*, 102 S. C., 386, 86 S. E. 954. In the latter case this Court considered Sections 2755 and 2770 of the Code of Laws

1912, and similar provisions in the constitution of the order, and used this language:

"From the foregoing sections of the Code of Laws, and the constitution of the order, which we have considered together, we have reached the conclusion that the clerk of the local camp was intended to be the representative or agent of the Sovereign Camp, with certain enumerated powers hereinbefore mentioned, especially those relating to the collection and transmission of such dues, as were required to be forwarded to the Sovereign Camp. That when said agent accepted dues from a suspended member, and placed his name on the list of those restored to membership, his action was obligatory on the Sovereign Camp, in the first instance, with power on its part, within a reasonable time, to review the action of the local clerk, if there was a substantial failure on his part, to comply with the requirements of the order. In this way alone, can force and effect be given to all the laws, governing the order."

The doctrine announced in that case was affirmed in the recent case of *Watson v. Sovereign Camp, Woodmen of the World,* S. C. 108, S. E. 145.

The defendant relied upon the case of *Vant v. Grand Lodge; K. of P.,* 102 S. C. 413, 86 S. E. 677. In that case there was a by-law of the order, which provided that—

"Any member living in a state of concubinage at the time of his death shall not be entitled to any benefits herein mentioned."

In the first place, the insured in that case did not possess the necessary qualifications for membership in the order, when his dues were received; and the agent was in no wise responsible for the disqualification. Therefore, the act of the agent was not prejudicial to the rights of the insured, except in so far as he received money for the purpose of allowing an applicant to become a member, in

violation of the by-laws. Furthermore, Section 2770 of the Code of Laws *was not considered in the case,* which was decided just after the Crumley case; and the writer of the opinion in the Crumley case, and also one other member who concurred with him concurred in the Vant case, which did not mention the Crumley case.

In the present case, the insured possessed all the qualifications for reinstatement as a member, upon certain conditions, *with which he could have complied.* The letter which he wrote to the local clerk, on the 2d of February, 1920, showed upon its face that the insured was desirous of complying with the requirements as to reinstatement. It was an act of wrong on the part of the local clerk to send him notice that his dues had been paid, and that he had been reinstated, without calling his attention to the other requirements for reinstatement. If the omission was intentional, it was a fraud upon the rights of the insured; if it was merely a mistake, then justice and fair dealing would not allow the defendant to profit by the errors of the person whom it had selected as its representative. This would be allowing the defendant to take advantage of its own wrong.

The following language used by this Court, in *Williamson v. Association,* 54 S. C., 582; 32 S. E., 765; 71 Am. St. Rep. 822, is applicable to the present case: .

"It is a well known fact that comparatively few people who become shareholders in such associations are familiar with their by-laws. They rely upon the honesty, integrity, and fair dealing of those who manage the affairs of the association. It is also a well known fact that the by-laws are frequently intricate and almost unintelligible to the average shareholder, and that those in charge of the affairs of the association usually become exceedingly expert in the interpretation of them, thus giving the association a decided advantage in the way of information over the shareholders.

Public policy, in order to prevent the perpetration of fraud, * * * demands that the defendant should not be allowed to elect whether it will be bound by its by-laws, * * * as to the time when the shares would mature."

So, also, is the following from *Blackwell v. Mortgage Co.*, 65 S. C. 105, 43 S. E. 395:

"The business of the company was such as necessarily compelled it to rely upon the work of other parties and this necessity usually and naturally gives rise to the employment of agents. When, therefore, this work is done by others, there is a strong implication that they are the agents of the parties receiving the benefit of their services."

In *Sternheimer v. O. U. T. C. A.*, 107 S. C. 291, 93 S. E. 8, the Court used this language:

"The facts of this case differentiate it from the case of *Crumley v. Sovereign Camp*, 102 S. C. 386, 86 S. E. 954. In that case the clerk of the local camp, who was held to be the agent of the Sovereign Camp, accepted payment of the arrearages, and reinstated the member before his death. In this case the secretary-treasurer refused to accept them. Clearly, therefore there was in this case no waiver by the conduct of the secretary-treasurer in accepting payment of arrearages. To hold that the failure of that officer or of the local council to suspend delinquent members was a waiver would be to abrogate the constitution and by-laws of the order and the statute of the State."

There is no conflict between the two cases.

The defendant's attorneys also rely upon the case of *Rabb v. N. Y. Life Ins. Co.*, 108 S. C. 137, 93 S. E. 711. That case involved the construction of Section 2712, Code of Laws 1912, which does not constitute a part of Article 3 entitled "Fraternal Benefit Associations," under which the present case arose.

There is another reason why it was error to direct a verdict in this case.   There was testimony to the effect that the letter sent to the defendant was deposited in the postoffice on the 7th of February, 1920, and that it was not received by the defendant until the 17th day of February, 1920.   There was a presumption that it was received by the defendant in due course of mail.   The question whether the defendant failed to receive the letter before the expiration of 10 days should have been submitted to the jury.   *Lefkowitz v. Wharton,* 115 S. C. 330, 105 S. E. 704.

Reversed and remanded for new trial.

MR. JUSTICES WATTS and FRASER concur.

MR. JUSTICE COTHRAN (dissenting) :   Action upon a benefit certificate issued to Troy E. Weathers, June 29, 1916, payable in the event of his death, to his brother, the plaintiff.

The member was suspended for failing to pay the dues for the month of December, 1919.   This suspension took place on January 1, 1920.   He failed also to pay the dues for the month of January, 1920.   On February 2, 1920, while living in Charlotte, N. C., he mailed a letter to the clerk of the local camp in Columbia, of which he was a member, containing a money order for $2.62, which he stated was for "2 months dues at old rates."   The local clerk in reply mailed the member a receipt for the dues of December, 1919, and January, 1920.   At the foot of this receipt, above the clerk's signature, was the following:

"If any of the sums herein receipted for are paid for the purpose of reinstating the sovereign so paying, the same *are received upon the express condition and agreement that they shall be held in trust for him until all the requirements of the laws of this society in relation to reinstatement have been complied with; that the payment and the giving of this receipt shall not be a waiver of such require-*

*ments, and that he has no claim upon this society until he* has fully complied therewith."

Across the face of the receipt were written the words: "Reinstated old rate," placed there by the local clerk.

The local clerk submitted to the Sovereign Clerk a report, dated February 7, 1920. On this report under the head of "Reinstated Members," appears the name of T. E. Weathers. It further shows that Weathers had been suspended for failing to meet the December assessment. The date of reinstatement appears by this report as December 13, 1919, which is palpably an error, as no claim of reinstatement prior to February 3, 1920, at which time he paid the assessments, is made. The Sovereign Clerk testified that he did not receive this report until February 17, 1920, two days after the death of Weathers. Weathers was taken sick on February 8, 1920, and died on February 15th.

In addition to the notice of the express conditions upon which the dues for December and January were received, contained in the receipt forwarded by the local clerk to Weathers on February 3, 1920, quoted above, the following provisions of the constitution, laws, and by-laws of the order are pertinent:

"Section 63 (b). If he fails to make any such payments on or before the last day of the month he shall stand suspended, and during such suspension his beneficiary certificate shall be void.

"Section 65. No suspended member shall be reinstated whose health is at any time impaired, or becomes impaired within thirty days after any attempted reinstatement.

"Section 66 (b). After the expiration of ten days and within three months from date of suspension of a suspended member, to reinstate, he must pay to the clerk of his camp all arrearages and dues and deliver to him a

written statement and warranty signed by himself and witnessed that he is in good health at the time, and will continue in good health for thirty days thereafter, and not addicted to the excessive use of intoxicants or narcotics as a condition precedent to reinstatement, and waiving all rights hereto if such written statement and warranty be untrue.

"Any attempted reinstatement shall not be effective for that purpose unless the member be in fact in good health at the time and continue in good health for thirty days thereafter, and if any of the representations of statements made by the said applicant are untrue then said payments shall not cause his reinstatement nor operate as a waiver of the above condition."

At the conclusion of all the evidence the defendant moved for a directed verdict in its favor, upon the grounds sufficiently indicated in the ruling of the Circuit Judge granting the motion:

"Under the view I take of the contract, when the insured paid his back dues on the 3rd day of February, 1920, and applied for reinstatement, it was upon the condition specified in Sections 65 and 66 of the constitution and by-laws of the Sovereign Camp. These by-laws provide that the reinstatement shall not be effective unless the member be in good health at the time and continue in good health for thirty days. As the insured died within that period, the condition upon which he was reinstated was violated and his beneficiary is not entitled to recover."

The plaintiff appeals, and by his exceptions raises the following issues: (1) That by the payment of the December and January dues on February 3, 1920, the member was, *ipso facto,* reinstated; (2) that the receipt by the Sovereign Clerk of the report of the local clerk, dated February 7, 1920, showing that the member had been reinstated, confirmed the reinstatement; (3) that the defendant

by its conduct and that of the local clerk had waived the failure of the member to comply with rule 66; (4) that the defendant by its conduct and that of the local clerk was estopped from contesting the reinstatement of the member; (5) that the question whether or not the defendant had waived the failure of the member to comply with rule 66 was a question of fact which should have been submitted to the jury.

Upon the face of the facts, the member did not comply with the provisions and conditions of the contract in reference to reinstatement, so as to entitle the beneficiary to the amount of insurance stipulated in the certificate. He defaulted in the payment of his dues for December, and on January 1, 1920, was suspended on that account, in accordance with Section 63 (b) above quoted. He defaulted again in the payment of the dues for January, 1920.

Under the plain provisions of Section 66, being in a state of suspension, he could not be reinstated except in the stipulated method: (1) By paying to the local clerk all arrearages and dues; (2) by delivering to the local clerk a written statement and *warranty*, signed by himself and witnessed, to the effect that he was in good health at the time and would continue in good health for 30 days thereafter, as a *condition precedent to* reinstatement; the "statement" referring to his good health at the time, and the "*warranty*" to his continuance in good health for 30 days thereafter; the section also explicitly providing:

"*Any attempted reinstatement shall not be effective for that purpose unless the member be in fact in good health at the time, and continue in good health for 30 days thereafter.*"

He complied with the first condition by paying the arrearage dues for December and January; he did not comply, or attempt to comply, with the condition requiring the written statement and warranty. Unless there be in

the evidence some testimony of a waiver of or estoppel upon the defendant, which would prevent it from insisting that the insured had not been reinstated, it is clear that the plaintiff should not be allowed to recover upon the certificate, and that the Circuit Judge was right in directing a verdict for the defendant. This presents the controlling question in the case.

The plaintiff seeks to establish a waiver of the failure of the insured to comply with the conditions of reinstatement contained in Section 66 (b) by the conduct of the local clerk, and also by the conduct of the Sovereign Camp. The acts of the local clerk relied upon for this purpose are: (1) The acceptance on February 3, 1920, of the arrearages for December and January; (2) affirming by the written statement on the receipt that the member had been reinstated; (3) entering on the local camp books the reinstatement of the member; (4) reporting to the Sovereign Camp that the member had been reinstated.

The acts of the head camp relied upon for this purpose are: (1) Acceptance of the remittance made by the local clerk of arrearages paid on February 3, 1920; (2) receipt of the report of the local clerk in which the reinstatement of the member was stated as a fact; (3) retaining without objection the paid-up arrearages.

### Waiver by the Local Clerk

I shall first consider the waiver claimed by the plaintiff to have resulted from the conduct of the local clerk. He received from the suspended member the arrearages for December and January; he mailed the member a receipt therefor; declaring on its face that the member had been reinstated; he made appropriate entries in his lodge book, indicating a reinstatement; he reported to the Sovereign Clerk that the member had been reinstated. In short, he did everything in his power to accomplish the reinstatement of the member, without compliance with and in de-

fiant disregard of the conditions of reinstatement prescribed in Section 66; and, if it was within his power to waive compliance with those conditions, I concede that he has accomplished that end.

The general powers of a local clerk are clerical and ministerial. His duties are to keep the records, attend to correspondence, make reports, give notices, collect dues, remit Sovereign Camp dues, and report upon the standing of the members. His power to act for the Sovereign Camp is expressly limited by Section 109 (g) of the laws and constitution of the order, which are specifically constituted by the certificate of membership "a part of the beneficiary contract between this society and the member," as follows:

"The clerk of a camp shall not by acts, representations, waivers, or by vote of his camp, have power or authority not delegated to him or to the camp by the constitution and laws of this society to bind the Sovereign or his camp."

In addition to this contractual limitation, which in the absence of statutory limitation would be recognized as a valid exercise of the power of parties to contract, the legislative authority of this State has not only not interfered with this contractual power, but has expressely recognized and confirmed it, in Section 2755, Vol. I., Code of Laws A. D. 1912:

"No subordinate body or any of its officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the association, and the same shall be binding upon the association, and each and every member thereof and their beneficiaries."

The effect of the conduct of the local clerk was practically to assure the member that he had done all that was necessary to establish his reinstatement; in other words, that he was not required to comply with Section 66 (b); that he, for the Sovereign Camp, waived the conditions required by that section. This was an attempted waiver,

in plain violation of the laws of the society and the laws of the State; it cannot be given that effect by calling it a misrepresentation or wrong on the part of the agent; otherwise every attempted waiver, which the subordinate officer is forbidden by the statute to consummate, may be transmuted into a waiver by giving it a different name, and that may be accomplished by indirection which the statute expressly forbids to be done directly.

In *Vant v. Grand Lodge,* 102 S. C. 413, 86 S. E. 677 discussing Section 2755, the Court says:

"This statute, passed in 1910, was designed, no doubt, to prevent the waiver of violations of the law of such associations by the local bodies, their officers or members, in favor of their own members, as a result of the fraternal feeling or sympathy which the members of such local orders, being more closely associated together, naturally entertain for each other, at the expense and to the detriment of the entire membership of the order."

Further on the Court says:

"Notwithstanding the local lodge may be the agent of the Grand Lodge for some purposes, it is within the power of the Legislature to enact that such agent shall not have authority to relinquish the rights of the principal, and it has so enacted in this section quoted; with the wisdom or policy of the enactment the Court is not concerned. The members of these orders are presumed to know their own laws, as well as those of the State, under which their rights must be determined. In view of the undisputed evidence of the violation of the law of the order, the evident purpose of which is to restrain the members from immoral living, and of the statute, which denies authority to the local lodge, its officers or members, to waive the resulting forfeiture of all benefits under the policy, the Court erred in refusing to direct the verdict for defendant."

It is sought to hold the Sovereign Camp responsible for the attempted waiver by the local clerk upon the ground that under Section 2770 the local clerk was the agent of the Sovereign Camp. It is clear to my mind that this section was not intended to enlarge the powers of the local officer, but simply to provide that in the matter of collecting dues the local officer should be regarded as the agent of the home company, and not of the member, the matter which was the subject of that section.

' The case of *Rabb v. Insurance Co.*, 108 S. C. 137, 93 S. E. 711, is cited by respondent to sustain its contention, but a consideration of it and its applicability to the case at bar are summarily dismissed by the learned Chief Justice, in the leading opinion with the remark, "That case involved the construction of Section 2712, Code of Laws, A. D. 1912, which does not constitute a part of Article 3, entitled 'Fraternal Benefit Associations,' under which the present case arose." In view of the manifest similar purpose of the two Sections, 2712 and 2770, and their practically identical terms, it appears to me that an interpretation by this Court of the effect of Section 2712 is exceedingly illuminating upon the interpretation of Section 2770.

In the Rabb case, the insured had failed to pay the premium due on July 30th; 30 days grace were allowed him; he was then notified that the policy had lapsed. The policy provided that at any time after default the insured might be reinstated by filing a written application for that purpose, presenting evidence of insurability satisfactory to the company, and paying unpaid premiums with interest. The insured made no effort to comply with these conditions. On October 16th, a friend of the insured paid to the company's agent the premiums which would have been due on October 30th if the policy had continued in force. The insured died October 17th. Upon the trial the de-

fendant moved for a directed verdict on the ground that the policy had lapsed, and that there was no evidence of a waiver. The Circuit Judge refused the motion, and submitted the question of waiver to the jury, charging them that, although the parties had agreed by their contract that the agent had no authority to waive and receipt for renewal premiums, or to waive a forfeiture for the non-payment of them, the statute (2712) annulled those provisions, and imposed liability upon the company for the act of its agent, notwithstanding he had no authority to do the act, to the knowledge of the insured. This Court reversed the judgment in favor of the plaintiff upon the ground that the defendant's motion should have been granted. Discussing Section 2712, the Court points out the purposes of the Act and its effect. The purposes are stated to be: (1) To regulate insurance agents by requiring them to be licensed, to subject them to penalties for violations of the insurance laws, and to prevent evasion thereof by the agents saying that they were acting as agents of the insured and not of the companies; (2) to thwart the practice of insurance companies of inserting in the policies a stipulation that he who was in fact their agent should be deemed the agent of the insured, so as to avoid the consequences of notice, etc. The Court held substantially that the Act in its effect could not extend beyond the purposes thus indicated; it did not provide, "as it would have been easy to do if that had been their intention, 'and such company shall be bound by his acts,' nor did they say that it should be held that he was acting within the scope of his authority"; that there was nothing in the Act which denied or restricted the power of the insurance company to place reasonable limitations upon the authority of its agents; that as decided in *Rowe v. Insurance Co.,* 90 S. C. 168, 72 S. E. 1018, the right of such a company to make rules and

regulations for the conduct of its business, which shall be binding upon those who deal with it, with knowledge thereof, is fully recognized; that the act of the agent in receiving and receipting for premiums on the policy was not only without authority, real or apparent, but also in violation of his contract with and instructions from the company, and of the contract between the insured and the company, all of which was known to the insured and his company.

The Rabb case was controlled solely by the conventions existing between the parties, which Section 2712 was held not to interfere with or affect. The case at bar is stronger for the defendant, in that it relies not only upon the express stipulations of the contract, but upon the statutory law of the State, which effectually bars any effort on the part of the member or his beneficiary to establish a waiver of the conditions of reinstatement by the conduct of the local clerk. The member is presumed to have known of these conditions; he cannot be heard to say that he did not know of them; he had them before him in the certificate, in the constitution and laws, and on the receipt which the local clerk mailed to him. The agent certainly knew or is presumed to have known of them. It strikes me as illogical to hold that the agent can waive for the Sovereign Camp a provision that he was fully advised of, that the member knew of, and which the rules of the order and the statute law of the State declare that he shall not be permitted to waive. How the statute could more effectually have barred such a claim I cannot conceive.

The Vant case, which the learned Chief Justice differentiates from the case at bar, is peculiar in its facts, and I hesitatingly suggest that the just conclusion arrived at by the Court might well have been placed upon a different ground. The member after the certificate had been issued, made payable to his wife, abandoned her,

married another woman, lived with her for a number of years, *and was so living at the time of his death.* A by-law of the order provided:

"Any member living in a state of concubinage *at the time of his death* shall not be entitled to any benefits herein mentioned."

It will be noted that the fact of living in a state of concubinage is not by the rule made a ground of suspension, expulsion, or forfeiture of membership. Perhaps the door of repentance was left open for the erring brother. At any rate, if he had tired of the new love, and was not in fact living in the adulterous relation at the time of his death, his former improper relation could not have been urged as a ground of forfeiture. As long as he lived, however concubinous his relation may have been, he was a member in good standing, and had a right to pay his dues. Hence, it appears to me that the question of waiver, claimed to have resulted from the acceptance of his dues, was improperly allowed in the case, which could properly have been decided upon the point alone that the member came squarely within the forfeiture by passing away in an unrepentant state. The statement in the leading opinion:

"The insured in that case did not possess the necessary qualifications for membership in the order when his dues were received"

—is not at all accurate. He was a qualified member when he was received; evidently the concubinage had not then begun, for he named his first wife as beneficiary; he was a qualified member as long as he lived, although in the inhibited relation; his certificate was forfeited only by his death in that relation. But, considering the case in the aspect which it evidently presented itself to the Court, and to the Chief Justice in the case at bar, as one providing a forfeiture if the member at any time after his induction became involved in that illicit relation, I can-

not draw a distinction · between the different brands of forfeiture, or discern the logic of sustaining the power of the local representative to waive one brand and not another. If he should be allowed to waive the forfeiture resulting from the failure to comply with the conditions of reinstatement, why not allow him to waive the forfeiture resulting from concubinage; the one is as imperative as the other, and both, in my opinion, come squarely within the inhibition of not only the laws of the order but the statute law of the State.

In the case of *Currence v. Woodmen,* 95 S. C. 61, 78 S. E. 442, the member was suspended for non-payment of dues; he paid the arrearages to the local clerk, who remitted them to the Sovereign Clerk with a letter stating the facts, and that the member desired to be reinstated. The Court held that this letter was notice to the Sovereign Clerk that the member had not complied with the conditions for reinstatement, or at least was notice of facts sufficient to put him on inquiry which would have developed knowledge of the fact; that, while "it is true that under the provisions of the statute (2755) the local clerk did not have the power to waive compliance with the requirements of the constitution and by-laws," the testimony tended to show that there was a waiver by the Sovereign Camp.

The Crumley case, 102 S. C., 386; 86 S. E., 954, is considered in the leading opinion as conclusive of this case. While I emphatically disapprove of the reasoning and conclusions of that case, and think that it is a subversion of the contractual and statutory rights of the defendant, in permitting a subordinate officer of the society indirectly to accomplish what the parties have agreed, and the statute declares he shall not do, the representative character of the local clerk is so limited as to bring the case at bar easily within the scope of that decision. The Court says:

"That when said agent accepted dues from a suspended member, and placed his name on the list of those restored to membership, his action was obligatory on the Sovereign Camp, in the first instance, with power on its part, within a reasonable time, to review the action of the local clerk, if there was a substantial failure on his part to comply with the requirements of the order."

This is a clear concession, it seems to me, that the local clerk did not have the power, absolute, to waive compliance, and that the issue of waiver must be determined by the conduct of the Sovereign Camp after receipt of the local clerk's report. In other words, waiver by the agent is impossible; has there been waiver by the Sovereign Camp? The implication is that if the Sovereign Camp received information from the local clerk that the member had been reinstated without complying with the conditions, and did not within a reasonable time review the action of the local clerk in reinstating him without requiring a compliance with the conditions, the Sovereign Camp has either waived compliance or is estopped from denying it.

The member died on February 15th; the testimony of the Sovereign Clerk is to the effect that the report of the local clerk was received on February 17th; on March 2d notice of the death of the member was mailed to the Sovereign Clerk by the local clerk; the matter was turned over to the general attorney, he, evidently assuming that the conditions had been complied with, advised no liability, not upon the ground that the declaration and warranty had not been delivered to the local clerk, but upon the ground, assuming that it had, that the member had died within 30 days from the date of his reinstatement. I think that the Sovereign Camp had a perfect right to arrive at this conclusion, and that it was entirely unnecessary to ascertain from the local clerk whether or not the declaration and

warranty had been delivered to him; for, whether delivered or not, the certificate was in any event discharged.

Certainly it may be affirmed that an unreasonable time had not elapsed between the date of the receipt of the local clerk's report and the death of the member or date of the notification of his death; and it is difficult to see how a waiver may be predicated upon an act of omission of one of the parties to a contract after the death of the other.

I think, too, that the extract from the Crumley case, quoted above, clearly shows that the obligation resting upon the Sovereign Camp within a reasonable time to review the action of the local clerk in reinstating a member without compliance with the conditions presupposes a knowledge by the Sovereign Camp of that fact; of which there is not a suggestion in the evidence; on the contrary it shows that the Sovereign Clerk was misled by the report of the local clerk to assume that the conditions had been complied with.

Under the Sternheimer case, 107 S. C. 291, 93 S. E. 8, the burden of proving a waiver of the conditions of reinstatement was upon the plaintiff. He has failed, as of necessity under the rules of the order and the statute of this State he must have failed, to establish a waiver by the local clerk; and, in order to establish one by the Sovereign Camp, upon this feature of the case, it was incumbent upon him to show that the Sovereign Camp knew, or had notice of facts sufficient to put it upon inquiry, of the local clerk's failure to comply with the requirements; that a reasonable time had elapsed between the date of that knowledge and the death of the member within which the action of the local clerk may have been reviewed by the Sovereign Camp; that it had failed to do so; and that from these facts the reasonable inference might be drawn that the Sovereign Camp intended to

abandon a known right, to waive such compliance. I do not find in the evidence a particle of support for such a conclusion.

The State of Alabama has a statute similar to Section 2755, except that it simply permits a fraternal organization to adopt a rule denying the power of a subordinate body or its officer to waive any of the provisions of the constitution and by-laws. In the case of *Beiser v. Woodmen*, 199 Ala. 41, 74 South. 235, quoting from the syllabus, it was held:

"Gen. Acts 1911, p. 713, § 20, allowing fraternal benefit societies to provide that no subordinate body, officers or members, shall have authority to waive provisions of laws or constitution, and that same shall be binding on the society, members and beneficiaries, held to preclude any waiver, expressed, or implied, or estoppel predicated on acts or conduct of officers or members."

In *Valentine v. Head Camp*, 180 Cal. 192, 180 Pac. 2, 3 A. L. R. 380, it is held, quoting from the syllabus:

"In view of the laws of defendant mutual fraternal organization, held, that local camp clerk was nothing more than a special agent of defendant with defined powers known to members, so that he could not waive any requirements of the law of the organization or by any act or course of conduct create an estoppel against defendant."

### Waiver by the Sovereign Camp

I shall now consider the waiver claimed by the plaintiff to have resulted from the conduct of the Sovereign Camp.

There is an issue of fact in the case whether or not the Sovereign Clerk received the report of the local clerk, stating that the member had been reinstated, prior to his death on February 15th. The local clerk testified that it was forwarded to the Sovereign Clerk on February 7th, and the Court will take judicial notice of the fact that

in the due course of mail, if mailed on the 7th, the letter should have reached Omaha, Neb., before the 15th. The Sovereign Clerk testifies that he did not receive it until the 17th, two days after the death of the member. This issue cannot, of course, be determined by this Court, and, if it makes any difference whether it was received before or after the death of the member, the jury alone has jurisdiction to determine the issue. For the purposes of this appeal, therefore, I will assume that it was received prior to the member's death.

That report conveyed the information that the member had been reinstated. Section 66 (b) of the rules under consideration devolves upon the local clerk the duty of receiving from the suspended member upon his application for reinstatement, in addition to the payment of all arrearages, the written declaration and warranty that he is in good health at the time, and will continue so for 30 days thereafter. The local clerk is not required to transmit this document to the Sovereign Clerk. Upon receipt of the report of the local clerk that the member had been reinstated, the Sovereign Clerk had the right to assume that the required declaration and warranty had been delivered to the local clerk, as the rule provides, and of course to retain the arrearages paid by the member and remitted by the local clerk. It cannot be successfully contended that the acceptance of this money, in ignorance of the fact that the local clerk had not insisted upon a compliance with the rule, amounted to a waiver of the conditions of reinstatement; for waiver is the voluntary abandonment of a *known* right; the Sovereign Clerk cannot be held to have waived a failure to comply with the conditions, when it is not shown that he was cognizant of such failure.

"To constitute a waiver within the definitions already given, it is essential that there be an existing right, benefit or advantage, a knowledge, actual or constructive, of

its existence, and an intention to waive it." 26 R. C. L. 908.

"No man can be bound by a waiver of his rights, unless such waiver is distinctly made, with full knowledge of the rights which he intends to waive and the fact that he knows his rights and intends to waive them must plainly appear." Id. 909.

"It is well settled by the great weight of authority that no waiver of a forfeiture or avoidance arises from an acceptance or retention of a premium, unless the insurer, at the time of such action on its part, had knowledge of the facts, *and the mere opportunity on the part of the insurer to have made an examination or ascertain the facts will not charge it with knowledge* of what an examination would have disclosed or what could have been ascertained." *Hardy v. Woodmen,* 17 Ala. App. 53, 81 South. 690.

In *State v. Board,* 78 S. C. 461, 59 S. E. 145, 14 L. R. A. (N. S.) 850, 13 Ann. Cas. 1133, it is said:

"By waiver is meant the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such a right. Therefore in order to constitute waiver the person against whom the waiver is claimed must have full knowledge of his rights and of facts which will enable him to take effectual action for the enforcement of such right."

In the Currence case, supra, the Court held that the local clerk could not under the statute (Section 2755) waive compliance with the conditions of reinstatement, but that his letter to the Sovereign Clerk was notice of noncompliance, and that for that reason the question of waiver *by the Sovereign Camp* was properly submitted to the jury, holding expressly and specifically that the local clerk was powerless to waive, and that waiver by the Sovereign Camp was dependent upon its knowledge or pre-

sumed knowledge of the noncompliance. In the case at bar this element is entirely wanting; on the contrary the report of the local clerk, in the statement that the member had been reinstated, was an assertion that the conditions of reinstatement had been complied with; at least, it certainly was no notice that they had not been.

If it should be said that the Sovereign Clerk did not have the right to assume from the local clerk's report that the member had complied with the conditions for reinstatement, and was negligent in not assuring himself that such was the fact, the most that could possibly be made of this position is that the Sovereign Clerk is thereby estopped from disputing the fact that the member had complied with the conditions.

It is clear that if the conditions, as a matter of fact, had been complied with, or as a matter of law the defendant by the conduct of the Sovereign Clerk be estopped from disputing that fact, the result, in legal contemplation, is that the conditions were complied with. If so, the terms of the conditions, the declaration that he was at that time in good health, and the *warranty that he would continue in good health for* 30 *days thereafter,* are necessarily binding upon the member. The beneficiary cannot repudiate the terms of the conditions, compliance with which he has invoked estoppel to establish; and as the member died within the 30 days, the warranty has been breached.

"Any attempted reinstatement shall not be effective for that purpose, unless the member * * * continue in good health for 30 days thereafter." Section 66 (c).

The report of the local clerk that the member had been reinstated contained an implied assertion that he had complied with the conditions required. It was equivalent to a direct and detailed statement of the compliance. If he had falsely made such a detailed statement and the Sovereign Clerk had accepted it as the truth, made

no inquiries and accepted the arrearages, where is the ground upon which to insist that the Sovereign Clerk, or through him the Sovereign Camp, had waived compliance with the conditions which he had many reasons to believe had been met? And, if the Sovereign Clerk should be held estopped from denying the detailed statement of the local clerk, surely the beneficiary who has invoked that estoppel should not be permitted to repudiate the terms of the conditions established by that estoppel.

I do not at all unite in the judicial animadversion occasionally made upon the attempts of such organizations as this to avoid the payment of death benefits in cases where the member has acted in violation of his solemn contract. The general officers of such institutions are trustees for the entire membership, and have no right, legal or moral, to weaken the ability of the organization to meet its valid obligations by paying claims that are not. The Court owes it as a matter of justice to the organization and its membership to recognize the rights of both when they are invoked. The impression seems prevalent that insurance conditions are traps for the unwary; as a matter of fact, they are the thought product of business men, engaged in a business enterprise, to be run on business principles, that the institution may respond to its valid obligations. The reason is stronger for upholding these conditions in fraternal organizations than in old-line insurance companies, if a difference should be made at all, for the constitution and by-laws of the order are ordained, not by directors and stockholders in a financial corporation, but by the membership of the order through their representatives of local lodges meeting in Grand Lodge.