14083

BLACK v. SOVEREIGN CAMP, W. O. W.

(180 S. E., 204)

304

*Messrs. Hodges & Hodges*, for appellant,

*Messrs. Ward & Ward,* for respondent,

June 6, 1935.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This is an appeal from an order directing a verdict in favor of plaintiff in an action in the County Court of Greenville County to collect a death benefit under a beneficiary certificate issued by defendant to John L. Black in September, 1901, the said Black departing this life in November, 1933. There appears to be no dispute between the litigants as to the principal amount plaintiff would be entitled to recover, if a recovery is to be had, although there is a question as to the rate of interest to be calculated on such amount,

which was $1,378.67. The matter of interest rate will be referred to later.

There are six exceptions by defendant-appellant, but in fact raise only two questions: (a) Was there any testimony tending to show a waiver on the part of defendant of the terms of the certificate and of its constitution, laws, and by-laws under which appellant claimed a forfeiture? and (b) Was the testimony tending to show a waiver and estoppel from claiming a forfeiture so conclusive that only one inference could be drawn therefrom?

In order to determine these questions it is necessary to refer to the testimony adduced upon the trial and as disclosed by the transcript of record. The certificate under which plaintiff claimed had been in force for more than thirty years. All dues or premiums had been paid within time, so far as the record discloses, until October, 1932, and that on January 10, 1933, the president of defendant-appellant wrote insured, J. L. Black, calling his attention to the fact that he was in arrears for October, 1932, and urging him to "at once remit the necessary amount to the Financial Secretary of your Camp, in order that your insurance may be in force and your interests protected." Presumably, Black upon receipt of this letter, or soon thereafter, paid his dues. Again he failed to pay his dues for February, 1933, and not until June 23, 1933, did he pay his February dues, at which time he paid to the financial secretary of the local camp not only the dues for February, but also for March, April, May, and June, 1933.

Under the constitution, laws, and by-laws of defendant, when the insured failed to pay his dues for February on or before the last day of the month, he automatically became suspended as of March 1, 1933, and his beneficiary certificates became null and void, unless reinstated in defendant association by complying with the terms of its said constitution, laws, and by-laws. Sections 65, 66, and 67 of the constitution, laws, and by-laws of defendant associa-

tion provide the method to be followed in order to reinstate a member who has been suspended, Section 67 being applicable to a member suspended more than three and less than six months, and is as follows: "Section 67. Should a person be suspended more than three and less than six months, if in good health, by delivering to the Financial Secretary a certificate of good health signed by himself in which he shall warrant that all the statements contained therein are true, and by the payment of all sums which he should have paid had he remained a member, including the current installment of assessments, and upon receipt and acceptance of said health certificate and the money by the Secretary of the Association, and if said person shall remain in good health for thirty days following, he shall again become a member."

When Black paid these dues on June 23, 1933, the financial secretary of the local camp to whom they were paid did not call for him to also deliver a certificate signed by himself as to being in good health, but accepted the dues without the certificate and on July 8, 1933, defendant-appellant was notified by the financial secretary of the payment of the dues in arrears by Black and of his reinstatement, and received from him remittance to cover the dues in arrears. On August 4, 1933, appellant wrote the financial secretary advising that as Black had been in suspension over three months he must furnish a certificate of good health signed by himself, and that it would hold the dues paid in trust awaiting such certificate of health. The financial secretary did not notify Black of this, but having in the meanwhile accepted payment of the July dues, again accepted payment of dues on October 31, 1933, for the months of August, September, October, and November, 1933, without ever notifying Black of the fact that the dues which he had paid June, 1933, were being held subject to his signing a certificate of good health, and Black died on November 8, 1933, without it having been brought to his attention.

Attorneys for appellant in oral argument state that they claimed a forfeiture solely on account of the suspension for the month of February, 1933. All of the testimony shows that it would have been a mere formality in June, 1933, when all dues to date were paid, for Black to have signed a certificate of good health, for at that time and until the day of his death he was to all appearances and so far as he knew in good health. Following the death of Black, the financial secretary of the local camp forwarded the other dues which had been paid by Black, and thereupon appellant disclaimed liability, asserting forfeiture of the policy for nonpayment of the February, 1933, dues and failure to furnish certificate of good health when back dues were paid in June, 1933, and sent its check to the financial secretary payable to Nora Black, the beneficiary under the certificate, in the sum of $17.50, the Sovereign Camp's portion of all dues which had been paid by Black with instructions to deliver to the said beneficiary, together with the local camp dues and any other money in his possession which was paid by or for the deceased for the purpose of reviving the beneficiary certificate of Black. The record discloses a dispute as to whether this check was ever tendered to Mrs. Black, but tender goes out of the case for the reason that only $17.50 was attempted to be refunded, and this amount by check, which is not tender, whereas the dues paid by Black amounted to $22.25. It will be noted that the insured lived from August 4, 1933, the date the insurer delegated to the financial secretary of the local camp the duty of procuring for it the certificate of health, until November 8, 1933, apparently in good health, with no further effort to procure said health certificate or give any notice to insured that his policy was not in good standing.

The case at bar depends not at all upon the general agency of the financial secretary for the Sovereign Camp, under the constitution, laws, and by-laws of the Sovereign Camp and the statutes applicable thereto,

but upon the specific agency created in him by the Sovereign Camp for two purposes: (1) To procure certificate of health or at least put Black on notice that he must furnish this certificate of health before he could become reinstated, and (2) to return or make a tender to the beneficiary of the certificate of the back dues that had been paid in. The financial secretary did not even notify Black that a certificate of health was required, and did not make a legal tender and refund of the back dues paid, in that the only amount sought to be tendered or refunded was the check of the Sovereign Camp for $17.50, made payable to the beneficiary.

Under the foregoing circumstances, there was ample testimony tending to show waiver, and in view of the fact that the local clerk or financial secretary had been made the agent of the Sovereign Camp, the language used in the case of *Weathers v. Sovereign Camp, W. O. W.*, 119 S. C., 402, at page 417, 112 S. E., 44, at page 48, is most applicable, and we quote therefrom as follows: "In the present case, the insured possessed all the qualifications for reinstatement as a member, upon certain conditions, with which he could have complied. The letter which he wrote to the local clerk, on the 2d of February, 1920, showed upon its face that the insured was desirous of complying with the requirements as to reinstatement. It was an act of wrong on the part of the local clerk, to send him notice that his dues had been paid, and that he had been reinstated, without calling his attention to the other requirements for reinstatement. If the omission was intentional, it was a fraud upon the rights of the insured; if. it was merely a mistake, then justice and fair dealing would not allow the defendant to profit by the errors of the person whom it had selected as its representative. This would be allowing the defendant to take advantage of its own wrong."

Again in 16 Cyc., page 681, a salient rule of law, good morals, and ethics is set forth as follows: "He who is silent

when conscience requires him to speak, shall be debarred from speaking when conscience requires him to keep silent."

In *Harvey v. Jefferson Standard Life Insurance Company,* 165 S. C., 427, 164 S. E., 6, Justice Stabler, now Chief Justice, speaking for the Court said: "It is elementary that forfeiture is not favored by the courts; it is also elementary that, if there is any testimony tending to show waiver of the forfeiture, an issue of fact is made for the jury, unless only one inference can be drawn from the evidence, when the question becomes one of law for the court."

Under the circumstances of the present case, the defendant should be estopped from claiming a forfeiture, and the testimony in regard to waiver permitted of only one inference being drawn.

All of defendant-appellant's exceptions have been considered, and are overruled.

The plaintiff-respondent excepts to the trial Judge allowing interest at only 6 per cent. instead of 7 per cent. The principal amount to which plaintiff was entitled should carry interest at the rate of 7 per cent. until July 1, 1934, and at 6 per cent thereafter.

With this modification, the judgment of the trial Court is affirmed.

The case is returned to the trial Court with instructions to enter judgment for the plaintiff for the principal amount found, with interest at 7 per cent. until July 1, 1934, and at 6 per cent. thereafter.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and FISHBURNE concur.